## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTOR URBAN RENEWAL GROUP LLC and, : <br> DRANOFF PROPERTIES, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> THE CITY OF CAMDEN, : <br> THE CAMDEN REDEVELOPMENT AGENCY, : <br> JASON ASUNCION, : <br> MICHELLE BANKS-SPEARMAN, Esquire, and : <br> OLIVETTE SIMPSON, : <br> : <br> Defendants. : <br> : | Civil Action No. 1:18-cv-10841 <br><br> JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Victor Urban Renewal Group LLC came into the City of Camden almost 16 years ago – long before any other major developers even considered the possibility of doing business in Camden – to redevelop The Victor Building, a blighted and long-abandoned RCA manufacturing facility on Camden's waterfront, into a thriving luxury apartment building. Despite being turned down by 49 banks, Victor Urban Renewal was able to complete the redevelopment and make The Victor Building the keystone of Camden's revival. Absent the tax exemptions granted by the City of Camden, Victor Urban Renewal would not have been able to do so. However, in a classic bait-and-switch, now that Victor Urban Renewal has signed a contract to sell The Victor Building for more than $71 million to Aimco One Market Street Urban Renewal, LLC, the City of Camden, through its officials such as Jason Asuncion and Michelle Banks-Spearman, has refused keep up its end of the bargain and transfer the tax exemptions as it contractually promised to do. Indeed, the City of Camden has refused to even entertain the application (which has been filed twice as a result of the City of Camden's

demands) requesting its consent to the transfer of the Financial Agreement.  The City of Camden's refusal is not based on any justification, and it does not have any rational basis. Instead, the City of Camden's refusal to consent to the transfer (as the Financial Agreement says the City of Camden "shall" do) is based solely on the fact that Victor Urban Renewal and its owner, Carl Dranoff, have fallen out of political favor.

The City of Camden's actions are a violation of Victor Urban Renewal's constitutionally protected property rights.  The City of Camden's actions also send a chilling message to any potential developer, lender or investor that Camden's commitments are not worth the paper they are printed on.  This behavior does not advance a legitimate government interest or have any rational basis.  Instead, it is shocking, especially given Camden's historic struggle to attract investment and its slow road to revival.  As a result, the City of Camden has breached its contractual obligations, and has deprived Victor Urban Renewal of its property without due process of law, in violation of 42 U.S.C. § 1983.  Additionally, in an effort to exert pressure on Victor Urban Renewal, the City of Camden has acted in concert with the Camden Redevelopment Agency to deny a related company – Dranoff Properties, Inc. – the benefit of its option to buy a building known as Radio Lofts.  Victor Urban Renewal and Dranoff Properties have therefore filed this complaint, and in support thereof allege as follows:

## THE PARTIES

1.      Victor Urban Renewal Group LLC is a New Jersey limited liability company with principal place of business located at 1 Market Street, Camden, NJ 08102.

2.      Victor Urban Renewal is ultimately owned by Carl E. Dranoff.

3.      Dranoff Properties, Inc. is a Pennsylvania corporation with a principal place of business located at 755 South Broad Street, Philadelphia, PA 19147.

4.    Dranoff Properties is ultimately owned by Carl E. Dranoff.

5.    Dranoff is a well-respected and experienced real estate developer who has developed and owns many properties.

6.    The City of Camden is a municipality located in Camden County, New Jersey.

7.    The City of Camden has acted under color of statute, ordinance, regulation, custom, or usage, as those terms are used in 42 U.S.C. § 1983 with respect to the acts alleged in this complaint.

8.    The City of Camden has acted through its officials, namely Jason Asuncion and Michelle Banks-Spearman.

9.    The Camden Redevelopment Agency is a government agency (specifically an agency of the City of Camden) with a principal place of business located at 520 Market Street, City Hall-Suite 1300, Camden, NJ 08101.

10.   The Camden Redevelopment Agency has acted through its officials, namely Olivette Simpson.

11.   The Camden Redevelopment Agency has acted under color of statute, ordinance, regulation, custom, or usage, as those terms are used in 42 U.S.C. § 1983 with respect to the acts alleged in this complaint.

12.   Jason Asuncion is the Camden City Business Administrator.  He has a work address of City Hall, 520 Market Street, Camden, NJ 08101.  He was, at all times and in all respects material to this complaint, acting under color of state law.

13.     Michelle Banks-Spearman is the Camden City Attorney.  She has a work address of City Hall, 520 Market Street, Camden, NJ 08101.  She was, at all times and in all respects material to this complaint, acting under color of state law.

14.     Olivette Simpson is the interim executive director of the Camden Redevelopment Agency.  She has a work address of 520 Market Street, City Hall-Suite 1300, Camden, NJ 08101.  She was, at all times and in all respects material to this complaint, acting under color of state law.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States.

16.     This Court has supplemental jurisdiction over the State law claims asserted in this complaint pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because the defendants reside within this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

18.     On August 21, 2002, Victor Urban Renewal and the City of Camden entered into a Financial Agreement, a copy of which is attached as Exhibit 1.

19.     The Financial Agreement granted Victor Urban Renewal a tax exemption under the Long Term Tax Exemption Law, N.J.S.A. § 40A:20-1 through 20, for the property bounded by Front, Cooper, Delaware and Market Streets in downtown Camden.  This property is and was known as The Victor Building.  It has an address of One Market Street, Camden, New

Jersey, and is identified on the tax maps of the City of Camden as Block 71 Lots 2, 4, 8, 9 and 17 and Block 72 Lot 28 and a portion of Lot 38.

20.    The City of Camden duly approved the Financial Agreement through an ordinance.

21.    The tax exemption provided by and under the Financial Agreement is and was very valuable.

22.    The tax exemption provided by and under the Financial Agreement could last for 35 years.  See Exhibit 1 at ¶ 2(a).

23.    Absent the tax exemption provided by and under the Financial Agreement, Victor Urban Renewal would not have been able to redevelop The Victor Building.

24.    Indeed, even with the tax exemption provided by and under the Financial Agreement, it was very difficult for Victor Urban Renewal to redevelop The Victor Building. For example, 49 banks turned down Victor Urban Renewal for financing because, *inter alia*, at the time Victor Urban Renewal redeveloped The Victor Building, developers had shunned Camden, and people did not think a redevelopment project could be successful in Camden.

25.    The Financial Agreement provides that the tax exemption can be transferred to another qualified urban renewal association or corporation.  See Exhibit 1 at ¶ 6(a).

26.    The Financial Agreement provides that "If such transferee shall assume the Redeveloper's obligations hereunder and shall otherwise qualify under all other applicable requirements of law, the City shall consent to such transfer."  See Exhibit 1 at ¶ 6(a).

27.    Victor Urban Renewal has fulfilled all of its obligations under the Financial Agreement.

28.     Victor Urban Renewal has a property right in the tax exemption created by the Financial Agreement.

29.     Victor Urban Renewal has contracted to transfer The Victor Building to Aimco One Market Street Urban Renewal, LLC.

30.     Aimco is a wholly owned subsidiary of Apartment Investment & Management Company, a Fortune 500 Real Estate Investment Trust that trades under the New York Stock Exchange symbol AIV.

31.     Aimco is a qualified urban renewal association or corporation. See Exhibit 2.

32.     Aimco is willing to and has contractually agreed to assume all of Victor Urban Renewal's obligations under the Financial Agreement.

33.     Aimco will pay more than $71 million for The Victor Building.

34.     The last day on which Aimco can (and will) purchase The Victor Building is September 4, 2018.

35.     Aimco's purchase of The Victor Building is conditioned on the transfer of the Financial Agreement, and the associated tax exemption, to Aimco.

36.     Victor Urban Renewal and Aimco have asked the City of Camden, formally beginning on April 13, 2018, to consent to the transfer of the Financial Agreement, and the associated tax exemption, from Victor Urban Renewal to Aimco.

37.     For whatever reason, the City, acting through its officials such as Asuncion and Banks-Spearman, has refused to do so.

6

38.     As an example, the City of Camden, acting through its City Attorney, Banks-Spearman, claimed that the request that the City of Camden to consent to the transfer had been made in an inappropriate way and/or on or in an inappropriate form.

39.     Although the request for the City of Camden to approve the transfer was proper, Victor Urban Renewal and Aimco acceded to the City of Camden's demand and resubmitted the request on and in the form the City of Camden demanded.

40.     The City of Camden then refused to place the request for transfer on the City Council agenda for any of its meetings since the initial request so that the City of Camden could (and under the provisions of the Financial Agreement had to) consent to the transfer.

41.     Indeed, during the one informal meeting Aimco was able to obtain with Camden's Mayor, the City of Camden, per Banks-Spearman, demanded, although it is not required under the terms of the Financial Agreement, that Aimco present its case for the transfer of the Financial Agreement at a "committee meeting."

42.     The City of Camden repeatedly refused to schedule such a meeting despite numerous requests that it do so.

43.     The City of Camden eventually scheduled a meeting with a number of Aimco representatives to review the request for the transfer on Thursday, June 7, 2018.

44.     Aimco's representatives made arrangements to travel across the country to attend the June 7, 2018 meeting.

45.     The City of Camden cancelled the meeting on Tuesday, June 5, 2018, two days before it was supposed to take place.

46.     The City of Camden has never given any explanation as to why it cancelled the meeting, or why it cancelled the meeting on such short notice.

47.     The City of Camden, acting through its officials such as Banks-Spearman and others, has continued to refuse, *inter alia*, to place the application for transfer of the Financial Agreement on the City Council Agenda, at which time the City of Camden could (and would) consent to the transfer of the Financial Agreement and the tax exemption.

48.     The City of Camden, acting through its officials such as Banks-Spearman and others, has continued to refuse, *inter alia*, to schedule a meeting with Aimco to prepare for a City Council meeting.

49.     The City of Camden's officials, such as Asuncion and Banks-Spearman, have also stopped returning calls and emails from Victor Urban Renewal and its representatives.

50.     Before she stopped returning phone calls, Banks-Spearman stated that the request that the City of Camden consent to the transfer was before Asuncion, and that she had no authority to move forward with the consent.

51.     The City of Camden must consent to the transfer of the Financial Agreement and the tax exemption created by the Financial Agreement by ordinance.

52.     To pass an ordinance, the Camden City Council must meet, approve the publication of the proposed ordinance, publish the proposed ordinance, and then approve the ordinance at a subsequent meeting.

53.     Given that the last day on which Aimco can (and will) purchase The Victor Building is September 4, 2018, time is of the essence.

54.     The City of Camden's refusal to consent to the transfer of the Financial Agreement and the associated tax exemption is not the only example of the City of Camden's animus towards Victor Urban Renewal and Dranoff.

8

55.     On August 20, 2002, Dranoff Properties entered into an option to buy the Radio Lofts property (identified on the tax maps of the City of Camden as Block 72 Lot 1 and Block 72 Lots 28 and 38) from the Camden Redevelopment Agency. A copy of this option is attached as Exhibit 3.

56.     Dranoff Properties obtained this option in 2002.

57.     Dranoff Properties has exercised its option to acquire Radio Lofts, subject to the conditions precedent set forth in the option.

58.     Dranoff Properties' option to buy Radio Lofts is and was very valuable.

59.     Dranoff Properties has fulfilled all of its obligations under the option to buy Radio Lofts.

60.     One condition of Dranoff Properties' closing on Radio Lofts was the environmental remediation of the property and the issuance of a "no further action letter" by the New Jersey Department of Environmental Protection.

61.     The Camden Redevelopment Agency was required to obtain funding for, and perform, the environmental remediation work.

62.     At some point, the Camden Redevelopment Agency stopped the remediation work, purportedly because it lacked funds to continue.

63.     On April 20, 2018, very shortly after the initial request that the City of Camden consent to transfer the Financial Agreement and the tax exemption on The Victor Building, the Camden Redevelopment Agency took the position that it would not continue the remediation work, and Dranoff Properties would have to close on the property.

64.     On April 20, 2018, very shortly after the initial request that the City of Camden consent to transfer the Financial Agreement and the tax exemption on The Victor

Building, the Camden Redevelopment Agency took the position that, if Dranoff Properties did not close on the property even absent a "no further action letter," the Camden Redevelopment Agency would (and could) terminate Dranoff Properties' option to purchase the property.

65.     At no point between 2002 and April 20, 2018 did the Camden Redevelopment Agency take the position that it would no longer seek funding for the environmental remediation of Radio Lofts (environmental remediation that the Camden Redevelopment Agency was required to perform to remove a condition precedent to Dranoff Properties' obligation to close and purchase Radio Lofts).

66.     At no point between 2002 and April 20, 2018 did the Camden Redevelopment Agency take the position that Dranoff Properties would have to close on Radio Lofts absent the issuance of a "no further action" letter (a letter that the Camden Redevelopment Agency was required to obtain to remove a condition precedent to Dranoff Properties' obligation to close and purchase Radio Lofts).

67.     The Camden Redevelopment Agency, without having performed its obligations under the option, and without having satisfied or obtained waivers of the conditions precedent to Dranoff Properties' obligation to close, has now taken the position that it has terminated Dranoff Properties' option to purchase Radio Lofts.

68.     The Camden Redevelopment Agency first took this position on April 20, 2018, just seven days after Camden was requested to consent to the transfer of the Financial Agreement and the tax exemption created by that Agreement.

## COUNT I – BREACH OF CONTRACT – VICTOR URBAN RENEWAL AGAINST THE CITY OF CAMDEN

69.     Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

70.     The Financial Agreement requires the City of Camden to consent to the transfer of the Financial Agreement, and the associated tax exemption, if the transferee assumes Victor Urban Renewal's obligations under the Transfer Agreement and if the transferee is a qualified urban renewal association or corporation.

71.     Aimco is willing to assume, and has contractually obligated itself to assume, all of Victor Urban Renewal's obligations under the Financial Agreement.

72.     Aimco is a qualified urban renewal association or corporation.

73.     All conditions precedent to Victor Urban Renewal's right to performance have been satisfied or waived.

74.     The City of Camden has breached its contractual obligations by refusing to consent to the transfer.

75.     Victor Urban Renewal has been damaged by the City of Camden's breach, in an amount to be proven at trial.

76.     Victor Urban Renewal is entitled to specific injunctive relief to enforce its rights and transfer its interests in land, namely The Victor Building.

**WHEREFORE**, plaintiff Victor Urban Renewal Group LLC respectfully requests that judgment be entered in its favor, and against the City of Camden, that the City of Camden be required to approve the transfer of the Financial Agreement to Aimco One Market Street, LLC, and that Victor Urban Renewal Group LLC be awarded an amount to be proven at trial, along with interest, costs, attorneys' fees, and such other relief as the Court finds to be just and equitable.

**COUNT II – VIOLAITON OF 42 U.S.C. § 1983 – ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

77.     Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

78.     The City of Camden and the Camden Redevelopment Agency maintain a custom, practice and/or policy of allowing their officials, such as the City Business Manager and its City Attorney, as well as the Camden Redevelopment Agency's executive director (or interim executive director) to block access of petitioners to Camden City Council, and to deny petitioners the benefit of their contracts, especially if the petitioner has fallen out of political favor.

79.     Asuncion, Banks-Spearman and Simpson have acted pursuant to that custom, practice and/or policy in this case.

80.     Officials of the City of Camden and the Camden Redevelopment Agency, such as Asuncion, Banks-Spearman and Simpson, have refused to consent, and have therefore caused the City of Camden to refuse to consent, to the transfer of the Financial Agreement.

81.     Officials of the City of Camden and the Camden Redevelopment Agency, such as Asuncion, Banks-Spearman and Simpson, have caused the Camden Redevelopment Agency to improperly and without justification take the position that Dranoff Properties' option to purchase Radio Lofts has been terminated.

82.     In doing so, these officials have acted, and have been acting, under color of state law.

83.     Victor Urban Renewal has a property right in both the tax exemption created by the Financial Agreement, and in the right to transfer the tax exemption created by the Financial Agreement.

12

84.     Dranoff Properties has a property right in its option to purchase Radio Lofts.

85.     By refusing to consent to the transfer of the Financial Agreement and the tax exemption created by the Financial Agreement, and by taking the position that option to purchase Radio Lofts is terminated, officials of the City of Camden and the Camden Redevelopment Agency, such as Asuncion, Banks-Spearman and Simpson, have deprived Victor Urban Renewal and Dranoff Properties of their property without due process of law.

86.     The actions of the City of Camden and the Camden Redevelopment Agency do not serve any legitimate government interest.

87.     The actions of the City of Camden and the Camden Redevelopment Agency do not have any rational basis.

88.     The actions of the City of Camden and the Camden Redevelopment Agency are shocking to the conscious.

89.     Victor Urban Renewal and Dranoff Properties have been damaged by the deprivation of their property.

90.     Victor Urban Renewal and Dranoff Properties are entitled to recover damages, in an amount to be proven at trial, as a result of the depravation of their property.

91.     Victor Urban Renewal and Dranoff Properties are entitled to recover costs and attorneys' fees pursuant to 42 U.S.C. § 1988. `

**WHEREFORE**, plaintiffs Victor Urban Renewal Group LLC and Dranoff Properties, Inc. respectfully request that judgment be entered in their favor, and against the City of Camden, the Camden Redevelopment Agency, Jason Asuncion, Michelle Banks-Spearman, and Olivette Simpson, that the City of Camden be required to approve the transfer of the

Financial Agreement to Aimco One Market Street, LLC, and that Victor Urban Renewal Group LLC and Dranoff Properties, Inc. be awarded an amount to be proven at trial, along with interest, costs, attorneys' fees, and such other relief as the Court finds to be just and equitable.

## COUNT III – BREACH OF CONTRACT – DRANOFF PROPERTIES AGAINST THE CAMDEN REDEVELOPMENT AGENCY

92.     Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

93.     Dranoff Properties' option to purchase Radio Lofts has not expired.

94.     Dranoff Properties' option to purchase Radio Lofts does not require Dranoff Properties to perform environmental remediation work on the property.

95.     On the contrary, Dranoff Properties' option to purchase Radio Lofts requires the Camden Redevelopment Agency to perform remediation work on the property.

96.     The issuance of a "no further action letter" by the New Jersey Department of Environmental Protection is a condition precedent to Dranoff Properties' obligation to purchase Radio Lofts under its option.

97.     The New Jersey Department of Environmental Protection has not issued a "no further action letter" for Radio Lofts.

98.     As a result, conditions precedent to Dranoff Properties' obligation to purchase Radio Lofts under its option agreement have not yet been satisfied by the Camden Redevelopment Agency.

99.     Despite the fact that Dranoff Properties is under no currently obligation to purchase Radio Lofts under its option, the Camden Redevelopment Agency has taken the position that the option has now expired because Dranoff Properties has not closed.

100.     In doing so, the Camden Redevelopment Agency has breached its contract.

101.     Dranoff Properties has been damaged by the Camden Redevelopment Agency's breach of contract, in an amount to be proven at trial.

102.     There are no conditions precedent precluding Dranoff Properties from enforcing its contractual rights.

**WHEREFORE**, plaintiff Dranoff Properties, Inc. respectfully requests that judgment be entered in its favor, and against the Camden Redevelopment Agency, and that Dranoff Properties, Inc. be awarded an amount to be proven at trial, along with interest, costs, attorneys' fees, and such other relief as the Court finds to be just and equitable.

## COUNT IV – DECLARATORY JUDGMENT – AGAINST THE CITY OF CAMDEN

103.     Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

104.     The Financial Agreement requires the City of Camden's consent if the "Redeveloper" (i.e. Victor Urban Renewal) wishes to "voluntarily transfer the Project."

105.     "The Project" is defined under the Financial Agreement as the "Land" (i.e. "an approximately 4.7 acre site bounded by Front, Cooper, Delaware and Market Streets in downtown Camden") and the "Improvements" (i.e. "all now or hereafter existing improvements located on the Land").

106.     The Financial Agreement does not require the City of Camden's consent if the "Redeveloper" (i.e. Victor Urban Renewal) and/or Victor Associates, L.P. (the holder of the Ground Lease) wish to transfer some or all of the ownership interest in either or both entities.

107.    The Financial Agreement does not require the City of Camden's consent if Victor Urban Renewal and/or Victor Associates undergo a change of control.

108.    There is currently a dispute between the parties as to whether, or under what conditions, Victor Urban Renewal and/or Victor Associates can transfer equity interests in Victor Urban Renewal and/or Victor Associates without the consent of the City of Camden while still keeping the Financial Agreement in force and without violating the Financial Agreement.

109.    Victor Urban Renewal therefore requests a declaratory judgment that it or Victor Associates can transfer equity interests in one or both companies to AIMCO without the City of Camden's consent, and without disturbing, violating or breaching the Financial Agreement.

**WHEREFORE**, plaintiff Victor Urban Renewal Group LLC respectfully requests that judgment be entered in its favor, and against the City of Camden, and a declaration that Victor Urban Renewal Group LLC and/or Victor Associates, L.P. can transfer equity interests in themselves to Aimco One Market Street, LLC without the City of Camden's consent and without violating the Financial Agreement, along with interest, costs, attorneys' fees, and such other relief as the Court finds to be just and equitable.

Respectfully submitted,

Dated:  July 20, 2018                          ____/s/ Aaron Krauss_____
                                               Aaron Krauss (16211991)
                                               Cozen O'Connor
                                               457 Haddonfield Road, Suite 300
                                               Cherry Hill, NJ 08002-2220
                                               (215) 665-4181
                                               akrauss@cozen.com
                                               Attorneys for Victor Urban Renewal Group LLC

16

## CERTIFICATE OF SERVICE

I certify that, on this date, I caused a true and correct copy of the foregoing

AMENDED COMPLAINT to be served upon the following via the Court's ECF filing system:

William M. Tambussi, Esquire
Mark P. Asselta, Esquire
Michael J. Watson, Esquire
Brown & Connery, LLP
360 Haddon Avenue – P.O. Box 539
Westmont, New Jersey 08108
Counsel for Defendants

And upon the following via personal service:

THE CAMDEN REDEVELOPMENT AGENCY
520 Market Street
City Hall-Suite 1300
Camden, NJ 08101

OLIVETTE SIMPSON
520 Market Street
City Hall-Suite 1300
Camden, NJ 08101

Dated:  July 20, 2018                              ___/s/ Aaron Krauss_____

# Exhibit 1

## FINANCIAL AGREEMENT

THIS FINANCIAL AGREEMENT (the "Agreement"), made as of the 21st day of August, 2002 between **THE CITY OF CAMDEN**, a municipal corporation, in the County of Camden (hereinafter, the "City"), and **VICTOR URBAN RENEWAL GROUP LLC**, a New Jersey limited liability company, having an office at c/o Carl E. Dranoff, The Victor, 115 Market Street, Camden, New Jersey 08102 ("Redeveloper"), which is qualified to do business under the provisions of the "Long Term Tax Exemption Law of 1998" as amended, said law being set forth in N.J.S.A. § 40A:20-1 through 20 (hereinafter referred to as the "Long Term Act").

### W I T N E S S E T H:

WHEREAS, the Redeveloper has proposed the redevelopment of portions of the areas generally identified as an approximately 4.7 acre site bounded by Front, Cooper, Delaware and Market Streets in downtown Camden (the "Land") for approximately 341 one and two bedroom luxury apartments with retail frontage along Market Street and Delaware Avenue in the City of Camden and surface parking in connection therewith (together with all now or hereafter existing improvements located on the Land, the "Improvements").  The Land and Improvements are sometimes collectively referred to herein as the "Project" or the "Property"; and

WHEREAS, the Land is identified on the City of Camden Official Tax Map as Block 71, Lots 2, 4, 8, 9 and 17 and Block 72, lot 28 and a portion of lot 38; and

WHEREAS, the Property is located within the City of Camden Urban Enterprise Zone and is also located within a designated "blighted area"; and

WHEREAS, the Redeveloper intends to acquire the Property from the City of Camden Redevelopment Authority; and

106771.00406/10829692v4

WHEREAS, the Redeveloper intends to enter into a ground lease (the "Ground Lease") for the Property with Victor Associates, L.P., a New Jersey limited partnership ("Associates") on the condition that Associates will construct or renovate the Improvements; and

WHEREAS, portions of the Property and Project may be withdrawn by the Redeveloper from the coverage of this Agreement, whereupon the remaining portions of the Property and Project shall remain subject to the terms hereof and shall thereafter be deemed to be the "Property" and "Project" respectively; and

WHEREAS, in accordance with the Long Term Act, the Redeveloper has heretofore made written application to the City for approval of a tax exemption for the Project; and

WHEREAS, the City has heretofore by Resolution adopted and approved said Application, a copy of such Application and a certified copy of such Resolution of approval being attached hereto as Exhibit "1" and Exhibit "2", respectively; and

WHEREAS, the City believes that the in lieu tax consideration to be given to the Project pursuant to this Agreement will facilitate maximum redevelopment of the Property and is, therefore, in the best interest of the City and the health, safety, morals and welfare of its residents and is in accordance with the provisions of the Long Term Act and the public purposes pursuant to which the redevelopment of the downtown area of the City has been undertaken and is being assisted in accordance with the applicable provisions of State law;

NOW, THEREFORE, it is mutually agreed as follows:

1.      This Agreement shall be governed to the extent not expressly provided for herein, by the terms and provisions of the Long Term Act, it being expressly understood and agreed that the

City relies upon the facts, data and representations contained in the Application, and Redeveloper covenanting and agreeing to use its reasonable best efforts to cause Victor to conform in the development, construction and operation of the Project to the matters set forth in said Application; that is, the manner in which Redeveloper proposes to cause Victor to develop, manage and operate the Project and the plans for financing the Project, it being understood, however, with respect to the Project cost, interest rate, financing terms and mortgage amortization, rents and lease terms, that the same are projected and estimated and may be modified as particular circumstances may require, but that in all material respects it is the intent of Redeveloper to comply as closely as shall be practicable with the information and representations set forth in the said Application.

2.    (a)    The City hereby grants to the Redeveloper, but only to the extent hereinafter expressly set forth in paragraph 3(a) hereof, exemption from all real property taxation on all now or hereafter existing Improvements on the Property and all portions thereof for a period of not more than thirty-five (35) years from the date of the execution of this Financial Agreement or for a period of not less than thirty (30) years from the "Date of Completion of the Project" (as hereinafter defined), whichever period ends first. Such tax exemption shall be claimed and allowed in the same or a similar manner as in the case of other real property exemptions. In the event that the exemption status changes during a tax year, the procedure for the apportionment of taxes for said year shall be the same as in the case of other changes in the tax exemption status during the tax year.

(b)    As used herein, the term "Date of Completion of the Project" is defined, as the date of issuance by the City of a final Certificate of Occupancy for all portions of the Project. If the Date of Completion for different portions of the Project occur at different times, the parties stipulate that for purposes of establishing the term of the exemption and for ease of administration,

the Date of Completion for the last portion of the Project shall apply for the entire Project provided only that said Date of Completion may not be more than nine (9) months after the date of issuance of the Certificate of Occupancy for the first portion of the Project.

3.    (a)    In lieu of paying any existing or new real estate or other taxes assessed against the Property of any portion or portions thereof, the Redeveloper shall make payment to the City of an annual service charge ("Annual Service Charge") for municipal services supplied to the Property in the amounts equal to a percentage of the gross revenue as such term is defined in N.J.S.A. § 40A:20-3 paid to the Redeveloper under the Ground Lease for the periods set forth in paragraph 3(b) below.  The computation of "Gross Revenue" pursuant to N.J.S.A. § 40A:20-3(a), is based on the total rent payable to the Redeveloper under the Ground Lease (the "Gross Revenue Amount") (such annual total rent being $1,333,333) and assumes that insurance, operating and maintenance expenses ordinarily and customarily paid by a landlord under a lease is included in the Gross Revenue Amount.

(b)    From the date hereof and throughout the term of this Agreement the Redeveloper shall pay to the City, in lieu of all real estate and other taxes now or hereafter assessed against the Improvements or any portion thereof, an amount calculated according to the following schedule:

(i)    in the first stage of the payment period (the "First Stage"), which shall commence at the Date of Completion of the Project and continue for a term of fifteen (15) full calendar years, fifteen percent (15%) of the annual gross revenue received by the Redeveloper;

(ii)    during the second stage of the payment period (the "Second Stage"), which shall be for a term of six (6) full calendar years beginning at the end of the First Stage, an

- 4 -

amount not less than twenty percent (20%) of taxes otherwise due with respect to the Property, or fifteen percent (15%) of the annual gross revenue received by the Redeveloper, whichever is greater;

       (iii)    during the third stage of the payment period (the "Third Stage") which shall be for a term of six (6) calendar years beginning at the end of the Second Stage, an amount not less than forty percent (40%) of taxes otherwise due with respect to the Property, or fifteen percent (15%) of the annual gross revenue received by the Redeveloper, whichever is greater;

       (iv)    during the final stage of the payment period (the "Final Stage"), which shall be for a term of three (3) calendar years, beginning at the end of the Third Stage, an amount not less than sixty percent (60%) of taxes otherwise due with respect to the Property, or fifteen percent (15%) of the annual gross revenue received by the Redeveloper, whichever is greater.

       (c)    Although the Act provides that payment of the Annual Service Charge shall be made quarterly, such Annual Service Charge shall be adjusted on a pro rata basis for any calendar year during the term of this Agreement following the Date of Completion which is less than a full calendar year.

       (d)    Against such Annual Service Charge the Redeveloper shall be entitled to credit for the amount, without interest, of the real estate taxes paid on the Land in the last four (4) preceding quarterly installments.

       (e)    Notwithstanding any of the provisions of this Agreement to the contrary, the minimum Annual Service Charge in each of the First Stage, Second Stage, Third Stage and Final Stage shall be the amount of the total taxes levied against all Property covered by the Project in the last full tax year in which such Property was subject to taxation and, following the Date of Completion of the Project the minimum Annual Service Charge shall be paid in each year in which

106771.00406/10829692v4

the Annual Service Charge, calculated pursuant to this paragraph (3)(e) would be less than the minimum Annual Service Charge.

(f)     Although the parties hereto agree that the Improvements and all portions thereof shall be tax exempt and that, except for the payment of the Annual Service Charge as set forth herein, neither the Redeveloper nor any lessee or sublessee of the Property shall have any obligation, from the date hereof and during the term of this Agreement, to pay any real estate or other taxes assessed against all or any portion of the Improvements or any portion thereof, the City Tax Assessor may continue to assess the Property based on the fair market value of the Property and not based on the Ground Lease.

4.     The Redeveloper covenants and agrees as follows:

(a)     To limit its profits and dividends from operations payable in accordance with the provisions of the Act.  The allowable profit rate is the percentage per annum arrived at by adding 1 1/4%  to the annual interest percentage rate payable on the Redeveloper's initial permanent private mortgage financing.  If there is no permanent mortgage financing, the allowable profit rate shall be arrived at by adding, 1 1/4% per annum to the interest rate per annum which the City determines to be the prevailing rate on mortgage financing on comparable improvements in the county.  The Redeveloper shall not make any distribution of profits unless, after giving effect thereto, the sum of the allowable net profit amounts for each year or part thereof (prorated) commencing on the Date of Completion and terminating at the end of the fiscal year preceding the date of such proposed distribution, exceeds the aggregate amount of distributions therefore made by the Redeveloper.

(b)     During the period of tax exemption, the Redeveloper shall distribute any

106771.00406/10829692v4

excess profits earned by it in accordance with N.J.S.A. § 40A:20-15. The Redeveloper shall have the right to establish and maintain reserves against contingencies in an amount not exceeding 10% of the gross revenues of the Redeveloper for the fiscal year preceding the year for which a determination is being made with respect to allowable net profit; and, the Redeveloper may retain such part of any excess profit as may be necessary to eliminate the deficiency, if any, in such reserves.

(c)     To pay the Annual Service Charge as provided for in paragraph 3 hereof, on a quarterly basis, in a manner consistent with the municipality's tax collection schedule.

(d)     In the event that the Annual Service Charge is not paid, the City may proceed to enforce the collection thereof in the same manner and with the same rights as are applicable to delinquent real estate taxes or in any other manner authorized by the Act.

(e)     To submit annually, within ninety (90) days after the close of each of its fiscal years, its reports of income and costs related to the Project, as certified by a Certified Public Accountant, to the City Attorney, which reports shall remain confidential, except as otherwise provided by law.

(f)     To submit annually, within one hundred and twenty (120) days after the close of each of its fiscal years, the calculation of all amounts due under this Agreement, such calculations to be attested to by the Certified Public Accountant of the Redeveloper as to the accuracy of the computation and the compliance with this Agreement.

(g)     Upon request of the City, to permit inspection of the property, equipment, buildings and other facilities of the Redeveloper at the Project, and to permit examination and audit of any of its books, contracts, records, documents and papers relating to this Agreement or the

Project, by duly authorized representatives of the City, provided same are at reasonable hours on reasonable notice and in the presence of designated representatives of the Redeveloper.

(h)     At all times prior to the expiration or other termination of this Financial Agreement, to remain bound by the provisions of the Act.

(i)     Not to effect or execute any agreement, lease, conveyance, or other instrument, whereby the Project, or any part thereof, or the use thereof, is restricted upon the basis of race, color, creed, religion, ancestry, national origin, sex, or marital status, in the sale, lease or occupancy thereof, nor to discriminate upon the basis of race, color, creed, religion, ancestry, national origin, sex, or marital status in the sale, lease or rental, or in the use or occupancy of the Project or any Improvement erected or to be erected thereon, or any part thereof, and to comply with all State and local laws, in effect from time to time, prohibiting discrimination or segregation by reason of race, color, creed, religion, ancestry, national origin, sex or marital status.

(j)     During the period of tax exemption, as provided herein, to be subject to limitation of profits payable by it pursuant to the provisions of N.J.S.A. § 40A:20-16.

(k)     Within ninety (90) days after the end of its fiscal year, to pay to the City any profits in excess of the profits permitted it under the provisions of the Act; provided, however, that the Redeveloper may maintain a reserve against contingencies in accordance with the provisions of N.J.S.A. § 40A:20-16.

(l)     That this Agreement shall be terminable by the Redeveloper in the manner provided under the Act.

5.     It is understood and agreed that, at the end of thirty-five (35) years from the date of the execution of this Financial Agreement, or at the end of thirty (30) years from the Date of

Completion of the Project (as defined herein), whichever period ends first, the tax exemption upon the Project shall thereupon absolutely cease, and the Land and Improvements may thereupon be assessed and taxed according to general law as other property in the City is assessed and taxed and, on the date on which the tax exemption upon the Project absolutely ceases, as described above, all restrictions and limitations herein contained as provided by law shall absolutely terminate and be at an end and the Redeveloper shall thereupon render its final account to the City.

6.    (a)    Unless it shall first terminate this Agreement and relinquish its tax exemption status, the Redeveloper shall not voluntarily transfer the Project to anyone other than a qualified urban renewal association or corporation. Any transfer to a qualified urban renewal association or corporation other than pursuant to paragraph 10(c) shall be subject to the reasonable approval of the City on the condition that the transferee shall assume all of the Redeveloper's obligations under this Financial Agreement and on the further condition that the transferee is otherwise qualified under all other applicable requirements of law. If such transferee shall assume the Redeveloper's obligations hereunder and shall otherwise qualify under all other applicable requirements of law, the City shall consent to such transfer.

(b)    The City and Redeveloper acknowledge that subsequent changes or expansions within the area of the Project may occur which may not now be in the contemplation of the parties. In connection with such changes or expansions, the City agrees that unimproved portions of the Project area (including surface parking areas) may be withdrawn by the Redeveloper from the coverage of this Agreement upon written notice to the City. Any such withdrawals shall not affect the continued applicability of this Agreement to the remainder of the Project.

7.    The Redeveloper may at any time after the expiration of one (1) year from the Date

- 9 -

of Completion of the Project notify the City that, as of a certain date designated in said notice, it relinquishes its tax exemption status as to all or any designated portion of the Project. As of the date so set, the tax exemption, the service charges, the profit restrictions and all other restrictions and limitations imposed by this Agreement or by the Long Term Act shall terminate as to the Project or any designated portion of the Project, as applicable.

8.    Upon any termination of such tax exemption, obligation and restrictions, whether by affirmative action of the Redeveloper as provided in paragraph 7 above or by the provisions of the Long, Term Act or pursuant to this Agreement, the date of such termination shall be deemed to be the end of the fiscal year of the Redeveloper, and within ninety (90) days after the date of such termination the Redeveloper shall pay to the City a sum equal to the amount of the reserve, if any, maintained pursuant to N.J.S.A. § 40A:20-15, as well as the excess profit, if any, payable pursuant to N.J.S.A. § 40A:20-15, and pursuant to paragraph 5 of this Financial Agreement by reason of the treatment of such date as the end of the fiscal year.

9.    Subject to the provisions of paragraphs 10(c) and 13(b), in the event of a default in or breach of this Agreement by Redeveloper, if such default or breach is not cured within ninety (90) days after receipt by Redeveloper of written demand by the City to do so, then the City may terminate this Agreement and such termination shall be deemed to be a termination of tax exemption as herein provided.

10.    The Redeveloper shall give the City written notice of any mortgage loan which provides for the advancing of funds either for temporary or construction loans or for permanent financing in respect to the Land, Improvements, or both, for the Project ("Mortgage Loan"), together with the name and address of holder of such Mortgage Loan ("Mortgagee"). Anything

- 10 -

106771.00406/10829692v4

contained herein to the contrary notwithstanding, in order to meet the terms, conditions and provisions required to secure a Mortgage Loan to finance the Project or a portion thereof, Redeveloper and the City further agree, for the benefit and protection of the Mortgagee, provided the Redeveloper has given the City notice of such Mortgage Loan, that:

     (a)    The Redeveloper will keep, observe and perform each and every provision of this Agreement and do every other act and all things required by law to keep and continue this agreement in full force and effect for the full period provided for herein except as may otherwise be agreed to by the Mortgagee;

     (b)    The City and the Redeveloper will make no agreement expressly, impliedly, or by conduct, serving to modify, alter, add to, terminate or delete, any provision of this Agreement and will exercise no option or right hereunder unless the Redeveloper has prior thereto obtained and, unless required, furnished to the City the written consent of the Mortgagee;

     (c)    If there is any default by the Redeveloper hereunder, and if such default has not been waived by the City and has not been cured (or, if appropriate, the curing of such default has not commenced) by Redeveloper (or the permitted assignee involved in such default, as the case may be) after due notice thereof, within the period therefor stated in this Agreement, the City agrees that before taking any step which it may then be entitled to take, it will provide Mortgagee a reasonable opportunity to cure the same in light of the nature of the default and the available means to correct it, but in any event shall allow not less than fifteen (15) days from the date Redeveloper was required to cure such default, and, if and to the extent that the Mortgagee cures any default, or causes the same to be cured, the Mortgagee shall be subrogated to the rights of the City hereunder and under such other applicable agreement, if any, and shall have the right, but not the duty, to

assume the position of the Redeveloper hereunder, in which event the City shall attorn to the Mortgagee hereunder;

     (d)    No waiver, election, acquiescence, estoppel or consent on the part of or against any party hereto shall affect or be binding upon the holder of the Mortgage Loan unless the Redeveloper has obtained and furnished to the City the prior written consent of the holder of the Mortgage Loan;

     (e)    Nothing in this Agreement shall be construed in any way as to adversely affect the right of the City to receive the contractual payments and other substantive rights to which it may be entitled under this Agreement, it being the primary intention hereof that all of the terms, conditions and provisions hereof shall be and remain in full force and effect for the benefit and protection of the Mortgagee, notwithstanding any default or breach by the Redeveloper, its successors or assigns, so long as the City receives, whether from the Redeveloper or from its lawful transferee or the Mortgagor, its subsidiary, nominee or assignees, the performance to be provided to it; and

     (f)    It is anticipated that a lender or a number of lenders may hold mortgages on all or portions of the Project. The Redeveloper shall notify the City of the identity and address of each lender as and when such mortgages have been granted. Each such mortgagee shall also notify the City Tax Collector of its desire to be notified in the event of a foreclosure in accordance with N.J.S.A. § 54:5-10.

     11.    Redeveloper agrees to require its Contractor performing the work on the construction of the Project (a) to use reasonable good faith efforts to hire residents of the City or minority workers in the rehabilitation and construction of the Project which reasonably conform to

the hiring goals set forth in the City's Affirmative Action Ordinance, Code of the City of Camden §12-1 et. seq. and to submit, or to cause its contractor(s) to submit, an Affirmative Action Plan ("Action Plan") to the City's Affirmative Action Compliance Officer (the "Compliance Officer") promptly following the commencement of construction of the Improvements and Redeveloper's acquisition of the Property, and (b) to submit quarterly reports of the status of the Action Plan to the Compliance Officer. Notwithstanding anything set forth herein to the contrary, the failure of Redeveloper or its Contractor to satisfy the provisions of the Action Plan shall not result in any penalties provided that Redeveloper or Contractor have made reasonable efforts to implement the Action Plan.

12. During the First Stage of this Agreement, Redeveloper will cause all trash from the Project to be collected by a private company.

13. Unless otherwise provided by law, neither the Redeveloper nor any of its officers, employees, members, or agents shall be personally liable for the payment of the Annual Service Charge nor for the payment of any tax or assessment which may be levied or assessed against any land or building now or hereafter constituting all of or a portion of the Project.

14. (a) Any notice, demand or other communication under this Agreement by any party to any other shall be sufficiently given or delivered if sent by registered or certified mail, postage prepaid and return receipt requested, or delivered personally and; in the case of the Redeveloper, addressed to Victor Urban Renewal Group LLC, Attn: Carl E. Dranoff, 114-120 North Front Street, Camden, New Jersey 08102 or such other address as Redeveloper shall designate by notice in the manner aforesaid and, if governed by subparagraph (b) below, to the Mortgagee, if any, identified under paragraph 11; and, in the case of the City, addressed to the Mayor

of Camden, New Jersey, with a copy to the City Attorney, each of the foregoing having an address for this purpose at City Hall, P.O. Box 95120, Camden, New Jersey 08101-5120; or to any such other address with respect to any such party as that party may, from time to time, designate in writing and forward to the others as provided in this paragraph.

(b)     Whenever the City shall deliver any notice or demand to the Redeveloper with respect to any breach or default by the Redeveloper in its obligations or covenants under this Agreement, the City shall at the same time forward a copy of such notice or demand to each holder of any Mortgage Loan authorized by this Agreement at the last known address of such holder shown in the records of the City.

(c)     (1)     After any breach or default referred to in the foregoing paragraph 12(b), each.  Such holder shall (insofar as the rights of the City are concerned) have the right, at its option to cure or remedy such breach or default.

(2)     Any such holder or any permitted transferee of any such holder who shall cure or remedy any breach or default which is referred to in the foregoing paragraph 13(b) shall be entitled to the benefits of the tax exemption previously granted to the Redeveloper pursuant to the Long Term Act and this Agreement, to the same extent that the Redeveloper would then have been if no default had occurred.

15.     (a)     In the event of a breach of the within Agreement by either of the parties hereto or a dispute arising, between the parties in reference to the terms and provisions as set forth herein, either party may apply to the Superior Court of New Jersey by an appropriate proceeding, to settle and resolve said dispute in such fashion as will tend to accomplish the purpose of the Long Term Act.  In the event that the Superior Court shall not entertain jurisdiction, then the parties shall

106771.00406/10829692v4

submit the dispute to the American Arbitration Association in Camden, New Jersey to be determined in accordance with its rules and regulations in such a fashion as to accomplish the purposes of the Long Term Act. Cost for said arbitration shall be borne equally by the parties.

      (b)    Anything in the foregoing to the contrary notwithstanding:

        (1)    any dispute between the parties hereto concerning any provision of this Agreement shall be governed by the Laws of the State of New Jersey; and

        (2)    no arbitrator shall have the power or authority to amend, alter, or modify, any part of this Agreement, in any way.

    16.    If any clause, sentence, subdivision, paragraph, section or part of this Agreement be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder hereof, but shall be confined in its operation to the clause, sentence,

106771.00406/10829692v4

subdivision, paragraph, section or part hereof directly involved in the controversy in which said judgment shall have been rendered.

IN WITNESS WHEREOF, the City has caused this Agreement to be duly executed in its name and on its behalf by the Mayor, and the Redeveloper has caused this Agreement to be duly executed on its behalf by duly authorized officers, all as of the day and year first above written.

ATTEST:

Luis Pastoriza, City Clerk

CITY OF CAMDEN

BY:
Name:
Title:

AUTHORIZED BY
M.C. -01:651

REVIEWED AND APPROVED AS
TO  FORM.

BY:
Dennis Kille, City Attorney

VICTOR URBAN RENEWAL GROUP, LLC,
a New Jersey limited liability company

By:   VICTOR ASSOCIATES, L.P., a New
Jersey limited partnership, its sole member

By:   VICTOR GP CORP., a New Jersey
corporation, as general partner

By:
Carl E. Dranoff, President

- 16 -

# Exhibit 2



## State of New Jersey
### DEPARTMENT OF COMMUNITY AFFAIRS
101 SOUTH BROAD STREET
PO BOX 805
TRENTON, NJ 08625-0805

PHILIP D. MURPHY
*Governor*

LT. GOVERNOR SHEILA Y. OLIVER
*Commissioner*

DEPARTMENT OF COMMUNITY AFFAIRS

TO:     State Treasurer
RE:     AIMCO ONE MARKET STREET URBAN RENEWAL, LLC
            (formerly Aimco One Market Street, LLC)
            File # 2261
            An Urban Renewal Entity


    This is to certify that the AMENDMENT TO REGISTRATION OF FOREIGN LIMITED LIABILITY COMPANY OF AN URBAN RENEWAL ENTITY has been examined and approved by the Department of Community Affairs, pursuant to the power vested in it under the "Long Term Tax Exemption Law," P.L. 1991, c.431.


    Done this   1st   day of   May   20 18   at Trenton, New Jersey.



                            DEPARTMENT OF COMMUNITY AFFAIRS

                            BY
                            Edward M. Smith, Director
                            Division of Codes and Standards



*New Jersey is an Equal Opportunity Employer • Printed on Recycled paper and Recyclable*

# Exhibit 3

## OPTION AGREEMENT

**THIS OPTION AGREEMENT** ("Option Agreement"), made as of this _20th_ day of ~~July,~~ *August*, 2002, by and between the *CITY OF CAMDEN REDEVELOPMENT AGENCY*, a public body corporate and politic of the State of New Jersey, organized pursuant to *N.J.S.A.* 40A:12A-1 through 63, having its principal offices at Camden City Hall, 13th Floor, Sixth and Market Streets, Camden, New Jersey (the Agency), and *DRANOFF PROPERTIES, INC.* (or its permitted assignee), with a business address at Locust on the Park, 225 South 25th Street, Philadelphia, Pennsylvania 19103 (the Redeveloper).

### WITNESSETH:

A.    Pursuant to a Resolution, dated October 3, 2001, the Agency was authorized to provide an exclusive option to the Redeveloper to enter into a Redevelopment Agreement with respect to the purchase and redevelopment of certain premises owned by the Agency, located at the intersection of Cooper, Front and Market Streets, in the City of Camden, New Jersey, including, without limitation, former RCA Building 8; and

B.    Upon acquisition of the aforesaid premises pursuant to the Redevelopment Agreement, the Redeveloper intends to redevelop the said premises as a market-rate rental apartment project containing approximately 100 apartment units, together with related parking and commercial facilities (collectively, the Improvements), said Improvements to be more fully described in the Redevelopment Agreement; and

106771.00406/11050793v2

C.     The Agency and the Redeveloper have entered into this Option Agreement in accordance with the aforesaid Resolution;

*NOW, THEREFORE*, the parties hereto, for good and valuable consideration, the receipt and sufficiency of which being hereby acknowledged, and intending to be legally bound, agree as follows:

1.     *Grant of Option*:

(a)     The Agency hereby grants and accords to the Redeveloper an exclusive option (the Option) to enter into a Redevelopment Agreement with the Agency (the Redevelopment Agreement) for the purpose of the purchase and redevelopment by or on behalf of Redeveloper of certain lands and premises, together with all buildings, improvements and amenities thereon and/or pertaining thereto, situate in the City and County of Camden, and the State of New Jersey, which lands and premises are identified as Block 72, Lot 1, and Block 72, Lots 38 and 28, on the Official Tax Map of the City of Camden (a copy of which being attached hereto as Exhibit A and made a part hereof), said lands and premises being hereinafter collectively referred to as "the Property".

(b)     The Agency warrants and represents that it has not heretofore authorized or entered, and will not authorize or enter, any Redevelopment Agreement or any other lease or tenancy or other agreement of any type, kind, nature or description regarding the use, occupancy, acquisition and/or development of the Property (and/or rights or options in connection with any of the foregoing) to any person or entity other than the Redeveloper prior to the expiration of the term of this Option Agreement (as set forth in Paragraph 2 below), or such extended time as may have been agreed to by the Agency

106771.00406/11050793v2

(subject, nevertheless, to claims of Adler Engineering Company ("Adler"), the owner of certain premises adjacent to the Property, as set forth in subparagraph (c) below).

(c)     Notwithstanding the provisions of the preceding subparagraph (b), Agency has advised Redeveloper of claims made by Adler that the Agency has previously granted to Adler rights to acquire from the Agency a portion of the aforesaid Lot 28 of Block 72 adjacent to Adler's premises for vehicular parking purposes.  Agency represents to Redeveloper that it knows no valid basis for said claims and will take all necessary and appropriate action (together with Redeveloper at the option of Redeveloper), to effect and complete the conveyance of the Property to the Redeveloper, including, without limitation, the said portion of Lot 28 of Block 72, as set forth herein, notwithstanding such claims, without any cost or liability to Redeveloper (except as provided in Paragraph 3(a)(v) below).

(d)     Prior to the date on which the Redevelopment Agreement is executed, the Redeveloper shall acquire no rights at law or in equity in the title to the Property by virtue of the Option herein granted.

2.     Exercise of Option:

(a)     The Option shall be exercised by written notice of such intention from the Redeveloper to the Agency, which notice shall be provided on or before the later of December 31, 2004, or twenty-four (24) months after the date of the closing for the acquisition by Redeveloper (or its affiliate) of the premises described in the "Nipper Agreement" (as hereinafter defined).  Within thirty (30) days following such exercise, the Agency shall tender to the Redeveloper, the form of the Redevelopment Agreement in accordance with the terms and conditions of this Option Agreement.  Thereafter, the parties

-3-

shall diligently and in good faith, negotiate to conclude and execute the Redevelopment Agreement.

(b)     The Option granted herein shall expire and become null and void on the later of December 31, 2004, or twenty-four (24) months after the closing pursuant to the Nipper Agreement, unless extended by the Agency, whereupon this Option Agreement shall be deemed terminated and of no further force and effect.

(c)     If, at any time and for any reason whatsoever, the Redeveloper determines that the redevelopment of the Property with the Improvements is not feasible, the Redeveloper may cancel this Option Agreement. Upon the cancellation of this Option Agreement, the parties shall have no right or claim against the other.

3.     *Redevelopment Agreement*:

The Redevelopment Agreement shall be parallel in form and substance to the Redevelopment Agreement, dated August 6, 2001, by and between the Agency and the Redeveloper, as amended by First Amendment, dated June 19, 2002, respecting the purchase and redevelopment of certain lands and premises known as the "Nipper Building" (the "Nipper Agreement"), a copy of which Nipper Agreement being attached hereto as Exhibit B and made a part hereof; provided, however, that notwithstanding any provision contained in the Nipper Agreement or in this Option Agreement to the contrary, it is the intent and the understanding of the parties hereto that the Redevelopment Agreement shall provide as follows:

(a)     the Property shall be conveyed as set forth in subparagraph (b) below by the Agency to the Redeveloper (or to such permitted assignee of the Redeveloper

as the Redeveloper shall designate in writing), for a purchase price of One ($1.00) Dollar, due and payable currently with said conveyance;

(b)     closing for the conveyance of the Property shall take place at a time and place mutually-acceptable to the parties, upon not less than fifteen (15) days prior written notice from the Redeveloper to the Agency of the date for such closing, which date shall not be more than six (6) months after the completion or satisfaction (or written waiver by the Redeveloper) of each of the following conditions:

(i)     environmental remediation with respect to the Property as may be required by the New Jersey Department of Environmental Protection, including, without limitation, ground water remediation, shall have been completed; provided, however, that the Agency shall have no obligation or responsibility of any kind to expend or cause to be expended any sums in regard to the Property, including, but not limited to, such sums as may be necessary for environmental work or remediation, it being the intent and understanding of the parties that the Agency shall only have the obligation to convey the Property to Redeveloper in an "as is" condition; provided, nevertheless, that if the aforesaid environmental remediation work shall not be completed as set forth above, Redeveloper shall have no obligation to proceed with the closing for the acquisition of the Property;

(ii)    the said Department of Environmental Protection shall have issued a "No Further Action" letter (or letters) and related Covenant Not To Sue with respect to the aforesaid remediation of the Property, in form and substance satisfactory to the Agency and the Redeveloper, in favor of the Agency, the Redeveloper and such other parties or entities as the parties hereto shall deem reasonably necessary or appropriate;

(iii)     the Redeveloper shall have obtained debt financing with respect to the redevelopment of the Property, satisfactory in all respects to the Redeveloper, in an amount equal to a percentage of the total estimated cost of the redevelopment of the Property which percentage shall not be smaller than the percentage determined by the ratio of the total financing for the Nipper Building to the Nipper Building's total estimated cost of redevelopment, together with equity financing with respect thereto, satisfactory in all respects to the Redeveloper, in the maximum amount obtainable based upon the sale of the historic tax credits anticipated to be available with respect to said redevelopment;

(iv)     a Corrective Deed from Lockheed-Martin Corporation (or its affiliate), in form and substance parallel to the Corrective Deed from said Corporation with respect to the premises subject to the Nipper Agreement, shall have been recorded with respect to the Property;

(v)     an agreement or agreements, reasonably satisfactory to the parties hereto, shall have been executed, permitting the Redeveloper to construct and operate a parking deck facility on portions of the Property, providing for (A) not less than two hundred fifty (250) parking spaces for the benefit of both Property and the premises subject to the Nipper Agreement, as well as (B) not less than fifty (50) car parking spaces for the exclusive use of the aforesaid premises owned by Adler adjacent to the Property;

(vi)     the Property shall have been placed on the National Register for historic certification purposes;

(vii)     The Redeveloper shall have obtained the benefit of such easements and other rights as Redeveloper may reasonably request to facilitate the

development of the Property (subject only to such approval of said easements and rights as may be required from the Delaware River Port Authority pursuant to its agreements with the Agency); and

(viii)    as provided in the Agency Resolution, dated October 3, 2001, the Agency shall have provided an option to the Redeveloper to enter into a Redevelopment Agreement with respect to the acquisition by the Redeveloper from the Agency of certain premises located at the northwest corner of Cooper and Front Streets in the City of Camden, New Jersey, including, without limitation, former RCA Building 2 (subject to the expiration or termination of an existing purchase option respecting said premises pursuant to the lease between the Agency and the Camden Board of Education), which Redevelopment Agreement shall include conditions to closing parallel to the conditions set forth in subparagraphs (i) through (vii) and shall otherwise be parallel in form and substance to the Nipper Agreement;

(c)    Agency shall grant (or cause to be granted) to Redeveloper, between the date of the exercise of this Option and the closing for the conveyance of the Property, a license to enter the Property for the type of purposes provided in, and subject to parallel terms and conditions of, that certain Construction License, dated April 24, 2001, between the Agency and the Delaware River Port Authority, respecting the Nipper Building; and

(d)    the Redeveloper shall commence redevelopment of the Improvements upon the later of Redeveloper's receipt of a Notice to Proceed from the Agency or within sixty (60) days after the conveyance of title to the Property, and shall complete said redevelopment within thirty (30) months of said commencement; provided, however, that

the Redeveloper shall have the right to an extension for the time for such commencement and completion attributable to any delay caused by force majeure.

4.   Condemnation: Casualty Loss:

Between the date hereof and the closing pursuant to the Redevelopment Agreement, the risk of loss or damage to of all or any portion of the Property shall be borne by the Agency.  In the event of any such loss or damage, or in the event that all or any portion of the Property is taken by condemnation, eminent domain or other governmental acquisition proceedings, the Redeveloper shall have the following rights and options:

(a)   to terminate the Redevelopment Agreement, in which event the parties hereto shall have no further rights or obligations hereunder,; or

(b)   to accept the Property as provided in the Redevelopment Agreement without any reduction of the aforesaid purchase price, in which event the Redeveloper shall be entitled to a credit for any and all insurance proceeds or condemnation and other awards (as the case may be), due and payable to the Agency prior to the closing on account of such loss, damage or taking, and an assignment from the Agency of all insurance proceeds and/or condemnation and other awards thereafter due or payable on account of the foregoing; or

(c)   to extend the closing date pursuant to the Redevelopment Agreement for a period of up to three (3) months in the event that such loss, damage or taking shall have occurred within six (6) months of the intended closing date as set forth in Paragraph 3(b), in order to evaluate whether to elect proceed pursuant to subparagraphs (a) or (b) above.

-8-

5.    Successors and Assigns.

(a)    The Redeveloper shall have the right to assign and transfer this Option Agreement, the Option, the Redevelopment Agreement and/or the Redeveloper's rights hereunder and thereunder in accordance with the provisions of Paragraph 18 of the Nipper Agreement.

(b)    Except as above provided, the Option herein granted is not assignable without the consent of Agency and any attempt to assign the same without such consent shall be null and void.

(c)    Subject to the foregoing, this Option Agreement shall inure to the benefit of, and be binding upon, the parties hereto and this respective successor and assign

6.    Notices:

All notices, requests, submissions of information and other communications under this Option Agreement shall be in writing and shall be sent by regular mail, postage prepaid to the following addresses:

If to the Agency:     The City of Camden Redevelopment Agency
                      The City Hall- 13th Floor
                      Sixth and Market Streets
                      Camden, NJ 08102
                      (voice): (856) 757-7600
                      (fax): (856) 963-2262

with a copy to:       Martin F. McKernan, Jr., Esquire
                      McKernan, McKernan & Godino
                      113 North Sixth Street
                      Camden, NJ 08102
                      (voice): (856) 964-7759
                      (fax): (856) 964-9620

-9-

106771.00406/11050793v2

If to the
Redeveloper:          Dranoff Properties, Inc.
                      225 South 25th Street
                      Philadelphia, PA  19103
                      Attention:  Mr. Carl E. Dranoff, President
                      (voice):  (215) 735-8440
                      (fax):  (215) 735-0776

with a copy to:       Julian P. Rackow, Esquire
                      Blank Rome Comisky & McCauley LLP
                      One Logan Square
                      Philadelphia, PA  19103-6998
                      (voice):  (215) 569-5671
                      (fax):  (215) 569-5692

7.    **Miscellaneous:**

(a)    Time is of the essence of this Agreement and as to the obligations of the Redeveloper to perform hereunder and is applicable to all time deadlines contained herein.

(b)    The within instrument constitutes the complete and entire agreement of the parties hereto with respect to the purchase and granting of the Option to enter into the Redevelopment Agreement.

106771.00406/11050793v2

(c)    No amendment hereto shall have any force or effect unless reduced to writing and executed by both of the parties.

*IN WITNESS WHEREOF*, the Agency and the Redeveloper, having the appropriate authorization to do so, have caused these presents to be executed as of the day and year first written above.

THE CITY OF CAMDEN
REDEVELOPMENT AGENCY

By: *Christine Hickman*
Name: Christine Hickman
Title: Chairperson

ATTEST:

By: *[signature]*
Martin F. McKernan, Jr.
Counsel

DRANOFF PROPERTIES, INC.

By: *[signature]*
CARL E. DRANOFF, President

ATTEST:

By: *[signature]*

(corporate seal)

-11-



*Nipper Redevelopment Agreement*

*EXHIBIT B*

*EXHIBIT "B"*

# Redevelopment Agreement

**This Redevelopment Agreement,** (hereinafter referred to as "Agreement"), is made this ___6th___ day of August, 2001,

**Between**

> THE CITY OF CAMDEN REDEVELOPMENT AGENCY, a public body corporate and politic of the State of New Jersey, organized pursuant to *N.J.S.A.* 40A:12A-1 through 63, whose present address is 13th Floor City Hall, Sixth & Market Streets, Camden, New Jersey 08101 (together with any successor public body or officer hereafter designated by or pursuant to law, is hereinafter called and referred to as *the Agency*),

**And**

> Dranoff Properties, Inc., a corporation of the Commonwealth of Pennsylvania, which maintains an office at 915 Montgomery Avenue, Narberth, Pennsylvania 19072 (or its permitted assignees) (and which is hereinafter referred to as *the Redeveloper*)

> **Whereas,**

> it is the opinion of Agency that the redevelopment of the Property proposed by the Redeveloper is in the best interests of the City and the health, safety, morals and welfare of the residents thereof and in accordance with the public purposes and provisions of the applicable federal, state and local laws and requirements under which this project has been undertaken and has been assisted;

> **Now Therefore**

In Consideration of the mutual promises and obligations of the parties hereto, each party hereby promises, covenants and agrees as follows:

1. *Purchase Price.*

Subject to all the terms, covenants and conditions of this Agreement, the Agency agrees to sell and the Redeveloper agrees to buy, all those properties situate in the City of Camden and County of Camden in the State of New Jersey more particularly described in Exhibit A, which is attached hereto, incorporated by referenced herein and made a part hereof, (hereinafter *the Property*) for the sum of one dollar ($1.00) which is to be paid at the time that title is conveyed.

2. *Conveyance of Property*

   2.1 *Form of Deed..* Agency will convey to Redeveloper or its permitted assignees, as the Redeveloper shall direct, good and marketable title to the Property, insurable by a title insurance company at regular rates, by a Bargain and Sale deed or deeds, as may be required, (hereinafter collectively called "Deed"). such conveyance and title, in addition to the condition subsequent provided for in , shall be subject to all other conditions, covenants and restrictions set forth or referred to elsewhere in this Agreement and to the reservations, exceptions and encumbrances, if any, and the standard printed exceptions set forth in the title policy.

   2.2 *Time and Place of Settlement.* Settlement shall be held at a time and place which is convenient to Redeveloper and Agency.

   2.3 *Recording of Deed.* Redeveloper shall promptly file the Deed for recording with the Register of Deeds of Camden County, New Jersey and shall pay the cost          for recording.    Redeveloper shall also pay all the costs and fees of any title   insurance   and/or title searches, and Closing fees.

   2.4 *Title Reports.* The Redeveloper will order a commitment to insure title within <u>five</u> (<u>5</u>) days following the Agency's execution of this Agreement, from Commonwealth Land Title Insurance Company, or any other title agency reasonably acceptable to the Agency, and will send the Agency a copy of the title commitment within <u>five</u> (<u>5</u>) days following Redeveloper's receipt of the title commitment,

and a list of those exceptions to title which are acceptable to the Redeveloper ("Permitted Exceptions"). Agency will have <u>fifteen</u> (<u>15</u>) days following its receipt of the commitment and the list of Permitted Exceptions to notify Redeveloper of Agency's inability to deliver title to the Property capable of development, subject only to the Permitted Exceptions, in which event the Redeveloper shall have the option to either accept such title to the Property as Agency can provide or to terminate this Agreement. The Agency shall be obligated to remove all liens of a monetary or liquidatable amount.

2.5 *Survey.* The Redeveloper will order a survey within <u>five</u> (<u>5</u>) days following the Agency's execution of this Agreement, from a surveyor reasonably acceptable to the Agency, and will send a certified copy of the survey to the Agency and Agency's attorney within <u>five</u> (<u>5</u>) days following Redeveloper's receipt of the survey.

3. *Time for Completion of Improvements.* The construction of the Improvements hereinafter described shall be completed within <u>thirty</u> (<u>30</u>) months after the commencement of the construction thereof; and such construction thereof shall commence upon the later of the receipt of a *Notice to Proceed* from the Agency or within <u>sixty</u> (<u>60</u>) days after the conveyance of title. Subject to and consistent with all other conditions of this Agreement, the Improvements to be undertaken shall be as set forth in Exhibit B which is attached hereto, incorporated by reference herein and made a part hereof.

4. *Submission of Drawings.* Prior to the commencement of construction, the Redeveloper shall submit final schematic drawings to the Agency.

5. *Period of Duration of Covenant.* The covenant set forth in Paragraph 17.1 hereof shall remain in effect in perpetuity.

6. *Payment of Prevailing Wage Scales.* Redeveloper shall comply with New Jersey Prevailing Wage Act, *N.J.S.A.* 34:11-56.25 to 56.48. If applicable, Redeveloper shall comply with the Davis-Bacon Act, 40 *U.S.C.* 276a to 276a-5. No other wage scales are applicable to this project.

7. *Disputes.*   In the event of any dispute of any kind concerning the meaning of any term or provision of this Agreement the interpretation placed thereon by the Agency by written notice shall be binding between the parties; unless Redeveloper within <u>thirty</u> (<u>30</u>) days following receipt of written notice from Agency by registered or certified mail containing such interpretation shall object to such interpretation.

8. *Approval Prior to Conveyance.*   Prior to conveyance of the Property in accordance with Paragraph 2 of this Agreement, Redeveloper shall submit to Agency a certified copy of a resolution duly adopted by the Planning Board of the City of Camden attesting to the approval by said Planning Board, and the Architectural Review Committee thereof, of the preliminary construction plans for the Property.

9. *Cooperation Between the Parties.* The Agency agrees to coöperate with the Redeveloper in making available to the Redeveloper information and data with regard to the Property and other projects that are being undertaken and/or planned in the vicinity of the Property.

10. *Financing.* The Redeveloper will only be obligated to complete closing for the acquisition of the properties under the terms of this Redevelopment Agreement if Redeveloper receives a firm written commitment from an institutional lender acceptable to Redeveloper for a first mortgage construction loan in the approximate amount of fifty million dollars ($50,000,000.00).   The Redeveloper shall use its best efforts to obtain financing.   Redeveloper shall begin such efforts immediately upon its execution of this Agreement.

11. *Agency Protections.*

11.1 *Release.*   As part of the consideration given for this Agreement the Redeveloper and all its parent corporations, subsidiaries, affiliates, administrators, directors, officers, receivers, trustees, members, volunteers, assigns, successors, agents, employees, servants, licensees, invitees, visitors, guests, consultants, experts, contractors, sub-contractors, and independent contractors (*Releasors*) now and forever waive, release, discharge the Agency and all its administrators, commissioners, directors, officers, members, assigns, successors, agents, employees, servants, licensees, invitees, visitors, guests, consultants, experts,

contractors, sub-contractors, and independent contractors (*Releasees*) from and against any and all actions, causes of action, obligations, expenses, liabilities, losses, penalties, fines, fees, costs, claims, suits and direct and/or consequential damages, including damages for personal injury or death, property damage or violations of laws, foreseen or unforeseen (*Released Claims*), including without limitation expenses, attorneys' fees and experts' fees associated with the Released Claims. The provisions of this paragraph will survive Closing and/or the cancellation, expiration or termination of this for any reason whatsoever. The provisions of this Section 11.1 shall not apply to the extent of acts or omissions that are caused by the Agency or its administrators, commissioners, directors, officers, members, assigns, successors, agents, employees, servants, licensees, invitees, visitors, guests, consultants, experts, contractors, sub-contractors, and independent contractors; nor shall the provisions of this Section 11.1 be in derogation of that Agreement between Lockheed Martin Corporation, the Agency, Coopers Ferry Development Association, Inc. and the Delaware River Port Authority dated May 23, 2001.

*11.2 Indemnification.* As part of the consideration given for this Agreement the Redeveloper (*Indemnitor*) shall be solely liable for Indemnitor's conduct, and the conduct of Indemnitor's parent corporations, subsidiaries, affiliates, administrators, commissioners, directors, officers, receivers, trustees, member, assigns, successors, agents, employees, servants, licensees, invitees, visitors, guests, consultants, experts, contractors, sub-contractors, and independent contractors (*Co-Indemnitors*). Indemnitor shall defend, hold and keep harmless, indemnify, protect, and save without limitation the Agency and all its administrators, commissioners, directors, officers, receivers, trustees, member, assigns, successors, agents, employees, servants, licensees, invitees, visitors, guests, consultants, experts, contractors, sub-contractors, and independent contractors (*Indemnitees*) from and against any and all: causes of action, claims, costs, demands, direct and/or consequential damages, death, expenses, fees, fines, liabilities, losses, obligations, penalties, personal injury, property damage, suits, or violations of laws, foreseen or unforeseen (*Indemnified Claims*) which

Indemnitees may incur, be exposed to, become responsible for, and/or pay out as a result of Indemnitor's and/or Co-Indemnitor's redevelopment activities at the Property. Indemnitor's shall pay without limitation any and all expenses and/or costs, including but not limited to: attorneys' fees, court costs, discovery costs, experts' fees, and investigation costs associated in any manner with the Indemnified Claims (*Indemnified Costs*). Indemnitee shall notify Indemnitor of the existence of any Indemnified Claims as soon as Indemnitee is aware of same, but in no event later than ten (10) days after such claim is made against Indemnitee. Indemnitor shall assume the investigation, defense, and expense of all Indemnified Claims with investigators and attorneys acceptable to the Indemnitee. The provisions of this paragraph will survive Closing and/or the cancellation, expiration or termination of this for any reason whatsoever. The provisions of this Section 11.2 shall not apply to the extent of acts or omissions that are caused by the Agency or its administrators, commissioners, directors, officers, members, assigns, successors, agents, employees, servants, licensees, invitees, visitors, guests, consultants, experts, contractors, sub-contractors, and independent contractors; nor shall the provisions of this Section 11.2 be in derogation of that Agreement between Lockheed Martin Corporation, the Agency, Coopers Ferry Development Association, Inc. and the Delaware River Port Authority dated May 23, 2001.

*11.3 Environmental.* Except for any rights of inspection reserved in this Agreement, and such rights as may accrue to the Redeveloper pursuant to that Agreement between Lockheed Martin Corporation, the Agency, Coopers Ferry Development Association, Inc. and the Delaware River Port Authority dated May 23, 2001, the Redeveloper agrees to accept the Property as is and where is, with all faults, in its current condition, subject to normal wear and tear. Except as may otherwise be set forth herein, or in any other writing between the Redeveloper and the Agency, the Redeveloper acknowledges and agrees: **(1)** that neither the Agency nor any agent or representatives of the Agency have made, and **(2)** that the Agency is not liable or responsible for or bound in any manner by, any express or implied representations, warranties, covenants, agreements, obligations, guarantees, statements, information or inducements pertaining to the Condition of the Property (as

hereinafter defined) or any part of it. The Redeveloper acknowledges that the Agency does not assume any responsibility or liability because of any existing condition. Redeveloper acknowledges, agrees, represents and warrants that:

(1)      Redeveloper, its agents and representatives have had or will have had access to information and data relating to all matters respecting the Property as  has considered necessary, prudent, appropriate, or desirable for the purposes of this transaction.

(2)      Redeveloper, its agents and representatives have had or will have had the opportunity to inspect the Property.

(3)      Redeveloper, its agents and representatives have independently inspected, examined, analyzed, and appraised all matters respecting the Property, and is fully cognizant of the Condition of the Property. The term *Condition of the Property* means the title and physical condition the Property, including all environmental matters, its quantity, character, fitness, quality, merchantability, fitness for particular purpose, income, expenses of operation, value and profitability, permitted uses, the structural and mechanical condition of the Property, the buildings, structures and improvements situate thereon, the plumbing, heating, electric and ventilating systems serving the Property, and any other matter or thing whatsoever with respect thereto.

In addition to, and without limiting the foregoing, Redeveloper further acknowledges and agrees that the Property is conveyed in its as is and where is condition with respect to all environmental matters. Redeveloper hereby assumes the risk that adverse past, present, or future conditions may not be revealed in its inspection or investigation. As a material inducement and consideration for the transfer hereunder, Redeveloper hereby indemnifies and releases Agency from any and all claims which arise from or are related to the Property, including without limitation as a result of the presence of any Hazardous Material (as hereinafter defined) and/or violation of any Environmental Law (as hereinafter defined), regardless of whether the conduct or condition took place or existed prior to or after the conveyance of the Property pursuant to this Agreement. Without limiting the generality of the foregoing, it is understood that the Redeveloper is assuming all of the Agency's liabilities respecting the Property under all Environmental Laws. It is the intent of the Agency

and the Redeveloper that as between them, Redeveloper shall be solely liable for compliance with all Environmental Laws affecting the Property or operations on the Property. Redeveloper hereby waives any and all rights of contribution and/or other claims might otherwise have against the Agency under applicable Environmental Laws and or at common law in connection with the environmental condition of the Property or claims now existing or hereafter arising as a result thereof. As used in this Agreement, the phrase *Hazardous Materials* means any hazardous wastes or hazardous substances as defined in any Environmental Law including, without limitation, any asbestos, PCB, toxic, noxious or radioactive substance, methane, volatile hydrocarbons, industrial solvents or any other material or substance which could cause or constitute a health, safety or other environmental hazard to any person or property. The term *Environmental Law* means any federal, state or local environmental cleanup statutes, laws, code, rules, regulations, ordinances, decisions, orders, decrees, and interpretations now or hereafter in effect including, without limitation: **(1)** The Industrial Site Recovery Act (formerly known as the Environmental Cleanup Responsibility Act), *N.J.S.A.* 13:1K-6 *et seq.*.; **(2)** The Spill Compensation and Control Act, *N.J.S.A.* 58:1-23.11; **(3)** The Comprehensive Environmental Response, Compensation and Liability Act, 42 *U.S.C.* § 9601 *et seq.* as amended by Superfund Amendments and Reauthorization Act; **(4)** The Toxic Substances Control Act, 15 *U.S.C.* § 2601 *et seq.*; **(5)** The Resource Conservation and Recovery Act, 42 *U.S.C.* § 6901 *et seq.*; **(6)** The Clean Air Act, 42 *U.S.C.* § 7401 *et seq.*; **(7)** The Federal Pollution Control Act, 33 *U.S.C.* § 1251 *et seq.*; and **(8)** any other federal, state, or local environmental statutes, laws, code, rules, regulations, ordinances, decisions, orders, decrees, and interpretations, including those yet to be enacted or promulgated; and shall include all amendments, successor laws and/or replacement laws to same. Notwithstanding anything set forth herein to the contrary, the Redeveloper shall not be responsible or liable for any groundwater contamination at or in the Property or the remediation of any such contamination, or because of the incorrectness or incompleteness of any of the information provided to the Redeveloper or the materials submitted to the NJDEP.

This provision shall survive: **(1)** termination, cancellation or expiration of this Agreement; **(2)** the Closing of this transaction; and **(3)** any future sale or other transfer of the Property by the Redeveloper

and their successors, and assigns; and shall be binding upon and its heirs, executors, successors and assigns of the Property.

12. *Amendments to Agreement.* This Agreement may be amended only upon the written consent of the Agency.

13. *Counterparts.* This Agreement is executed in <u>six</u> (<u>6</u>) counterparts. Each counterpart shall constitute one and the same instrument, shall be binding on the Parties, and shall for each and every intent, reason and purpose, be considered an original thereof.

14. *Preparation of Property for Redevelopment.*

14.1 *No Work to be Performed by the Agency.* The Property shall be conveyed to Redeveloper in its as is condition. Redeveloper shall be responsible for the total rehabilitation of the Property in accordance with its proposal. Agency shall be under no obligation to make any repairs or improvements to the Property.

14.2 *Waiver of Claims and Joining in Petition by Redeveloper.* Redeveloper hereby waives (as the purchaser of the Property under this Agreement and as the owner after the conveyance of the Property provided for in the Agreement) any and all claims to awards of damages, if any, to compensate for the closing, vacation, or change of grade of any street, alley, or other public right-of-way within or fronting or abutting on or adjacent to, the Property.

15. *Rights of Access to Property.*

15.1 *Right of Entry for Utility Service.* The Agency reserves for itself, the City, and any public utility company, as may be appropriate, the unqualified right to enter upon the Property at all reasonable times for the purpose of reconstructing, maintaining, repairing, or servicing the public utilities located within the Property boundary lines provided such entrance is undertaken without interference with the operation of the Property (except in

the event of an emergency) and at the expense of the entity so entering.

15.2 *Access to Property.* Prior to the conveyance of the Property by the Agency to the Redeveloper, the Agency shall permit representatives of the Redeveloper to have access to any part of the Property as to which Agency holds title, at reasonable times for the purpose of obtaining data and making various tests concerning the Property necessary to carry out the Agreement. After the conveyance of the Property to Redeveloper, Redeveloper shall permit the representatives of Agency, the City, and the United States of America access to the Property at all reasonable times which any of them deems necessary, including but not limited to inspection of all work being performed in connection with the construction of the Improvements. No compensation shall be payable, nor shall any charge be made in any form by any party, for the access provided for in this Provision.

16. *Plans, Construction of Improvements and Certificate of Completion.*

16.1 *Plans for Construction of Improvements.* Plans and specifications for the redevelopment of the Property and the construction of the Improvements thereon shall conform with Planning Board requirements, this Agreement, all applicable federal, state and local laws, decisions, statutes, regulations, orders and rules.

16.2 *Commencement and Completion..* The Redeveloper agrees for itself, its successors and assigns, and every successor in the interest to the Property or any part thereof, and the Deed shall contain covenants on the part of Redeveloper for itself and such successors and assigns, that Redeveloper and such successors and assigns, shall diligently prosecute to completion the redevelopment of the Property through the undertaking of the Improvements thereon, and that such Improvements shall in any event be completed within the period specified in  hereof. It is intended and agreed that the obligation to begin and diligently prosecute to completion the Improvements on the Property shall commence with the conveyance thereof to Redeveloper. It is further intended and

agreed that such agreements and covenants shall be covenants running with the land and that they shall, in any event, and without regard to technical classification or designation, legal or otherwise, and except only as otherwise specifically provided in this Agreement be binding to the fullest extent permitted by law and equity for the benefit of the community and Agency against Redeveloper and its successors and assigns to or of the Property or any part thereof or interest thereto.

16.3 *Progress Reports.* Subsequent to conveyance of the Property, or any part thereof, to Redeveloper, and until construction of the Improvements has been completed, Redeveloper shall submit to the Camden Redevelopment Agency copies of any and all reports submitted to the City of Camden, Department of Housing and Urban Development and any other entity to whom Redeveloper is required to submitted progress and/or final reports.

*16.4 Certificate of Completion.*

16.4.1 After completion of all Improvements in accordance with those provisions of this Agreement relating to the obligations of Redeveloper to complete the Improvements the Agency will furnish Redeveloper with an appropriate instrument so certifying no later than 30 days after the request of the Redeveloper for same. Such certification by Agency shall be (and it shall be so provided in the certification itself) a conclusive determination of satisfaction and termination of the agreements and covenants in this Agreement and in the Deed with respect to the obligations of Redeveloper, and its successors and assigns, to complete the Improvements to all properties conveyed, and shall relieve the Redeveloper and its successors and assigns of all obligations and responsibilities set forth in this Agreement except only those contained in Section 17.

16.4.2 Such certification provided pursuant to this Provision shall be in such form as will enable it to be recorded in the proper office for the recording of deeds and other instruments pertaining to the Property, including the

Deed. If Agency shall refuse or fail to provide any certification in accordance with the provisions of this Provision, then Agency shall, within <u>thirty</u> (<u>30</u>) days after written request by Redeveloper, provide Redeveloper with a written statement, indicating in adequate detail in what respect Redeveloper has failed to complete the Improvements in accordance with the provisions of this Agreement, or is otherwise in default, and what measures or acts it will be necessary, in the opinion of Agency, for Redeveloper to take or perform in order to obtain such certification.

17. *Restrictions upon Use of Property.*

    17.1 *Restrictions upon Use.* The Redeveloper agrees for itself, and its successors and assigns, and every successor in interest to the Property or any part thereof, and the Deed shall contain covenants on the part of Redeveloper for itself and such successors and assigns that Redeveloper and such successors and assigns, shall not discriminate upon the basis of race, color, gender, religion or national origin in the sale, lease or rental or in the use or occupancy of the Property. The Redeveloper also agrees for itself, and its successors and assigns, and every successor in interest to the property or any part thereof, that the project will be developed pursuant to and in accordance with the uses and restrictions set forth in the Urban Renewal Plan.

    17.2. *Covenants Binding upon Successors in Interest; Period of Duration.* It is intended and agreed, and the Deed shall so expressly provide that the agreements and covenants provided in Section 17.1 hereof shall be covenants running with the land and that they shall, in any event, and without regard to technical classification or designation, legal or otherwise, and except only as otherwise specifically provided in the Agreement, be binding, to the fullest extent permitted by law and equity, for the benefit and in favor of and enforceable by, Agency, its successors and assigns, the City and any successor in interest to the Property, or any part thereof, and the United States, against Redeveloper, its successors and assigns and every successor in interest to the Property, or any

part thereof or any interest therein, and any party in possession or occupancy of the Property or any part thereof. It is further intended and agreed that the agreements and covenants provided in Provision hereof shall remain in effect without limitation as to time: Provided, that such agreements and covenants shall be binding on Redeveloper itself, each successor in interest to the Property, and every part thereof, and each party in possession or occupancy, respectively, only for such period as such successor or party shall have title to, or an interest in, or possession or occupancy of, the Property or part thereof.

**17.3 *Rights to Enforce.*** It is intended and agreed that Agency, and its successors and assigns, and the United States, shall be deemed a beneficiary of the provisions of Section 17.1 hereof, both for and in their own right and also for the purposes of protecting the interests of the community and other parties, public or private, in whose favor or for whose benefit such agreements and covenants have been provided. Such agreements and covenants shall (and the Deed shall so state) run in favor of Agency and the United States, for the entire period during which such agreements and covenants shall be in force and effect, without regard to whether Agency or the United States has at any time been, remains, or is an owner of any land or interest therein to or in favor of which such agreements and covenants relate. Agency and the United States may in the event of any breach of the covenant provided in Section 17.1 hereof, to exercise all the rights and remedies, and to maintain any actions or suits at law or in equity or other proper proceedings to enforce the curing of such breach of agreements or covenants, to which it or any other beneficiaries of such agreements or covenants may be entitled. Notwithstanding anything contained herein to the contrary, the Redeveloper shall have thirty (30) days from its receipt of written notice of the alleged breach of Section 17.1 above to cure such alleged breach and, provided that the Redeveloper is diligently attempting to cure such alleged breach, such longer period as may be reasonably necessary to cure same. The failure, at any time to enforce the rights hereunder shall not be construed as a waiver thereof.

**18. *Prohibition Against Assignment and/or Transfer.***

***18.1 Representations as to Redevelopment.*** The Redeveloper represents and agrees that its purchase of the Property, and its other undertakings pursuant to the Agreement, are, and will be used, for the purpose of redevelopment of the Property and not for speculation in land holding. The Redeveloper further recognizes that in view of:

(1) the importance of the redevelopment of the Property to the general welfare of the community:

(2) the substantial financing and other public aids that have been made available for the purpose of making such redevelopment possible; and

(3) the fact that a transfer of any interest with respect to the identity of the parties in control of Redeveloper for practical purposes a transfer or disposition of the Property then owned by Redeveloper, the qualifications of Redeveloper, are of particular concern to the community and Agency.

The Redeveloper further recognizes that it is because of such qualifications and identity that Agency is entering into this Agreement with Redeveloper, and, in so doing, is further willing to accept and rely on the obligations of Redeveloper for the faithful performance of all undertakings and covenants hereby by it to be performed without requiring in addition a surety bond or similar undertaking for such performance of all undertakings and covenants in the Agreement.

***18.2 Prohibitions Against Transfer of Interests of General Partner of Redeveloper.*** For the foregoing reasons, the Redeveloper represents and agrees for itself and any successors in interest of itself and its partners, that (except upon a removal of the General Partner by the limited partners for cause) prior to completion of the Improvements as certified by Agency, and without the prior written approval of Agency: **(1)** there shall be no transfer of ten percent (10%) or more interest in the General Partner of the Redeveloper (which term shall be deemed for the purposes of this and related provisions to include successors in interest of such partnership interest or any part thereof or interest therein of such interest or any part thereof), **(2)** there shall be no transfer by any shareholder (of any legal or beneficial interest) of ten percent

(10%) or more of the General Partner of the Redeveloper, **(3)** nor shall any such owner of such aforementioned corporate or partnership interest suffer such transfer to be made.

**18.3  *Prohibition Against Transfer of Property and Assignment of Agreement.***  Also, for the foregoing reasons, and except as otherwise provided in Section 18.5, the Redeveloper represents and agrees for itself, and its successors and assigns, that except only by way of security for, and only for, **(1)** the purposes of obtaining financing necessary to enable Redeveloper or any successor in interest to the Property, or any part thereof, to perform its obligations with respect to making the Improvements under the Agreement, and **(2)** any other purpose authorized by the Agreement, Redeveloper has not made or created, and that it will not, prior to the proper completion of the Improvements as certified by Agency, make or create, or suffer to be made or created, any total or partial sale, assignment, conveyance, or lease, or any trust or power, or transfer in any other mode or form of or with respect to this Agreement or the Property, or any part thereof or any interest therein, or any contract or agreement to do any of the same, without the prior written approval of Agency: Provided, that, prior to the issuance by Agency of the certificate provided for in Section 16.4  hereof as to completion of construction of the Improvements, Redeveloper may enter into any agreement to sell, lease or otherwise transfer, after the issuance of  such certificate, the Property or any part thereof, or interest therein, which agreement shall not provide for payment of or on account of the purchase price or rent for the Property, or the part thereof or the interest therein to be so transferred, prior to the issuance of such certificate.  In connection with a transfer prior to the completion of the improvements, the Agency shall be entitled to require, provided that such consents as may be required are not unreasonably withheld or delayed and if objected to must be done so with specificity (with the understanding that the failure of the Agency to object within ten (10) business days of notice of same shall be deemed to constitute its consent) and except as otherwise provided in the Agreement, as conditions to any such approval that:

   **18.3.1** any proposed transferee shall have the qualifications and

financial responsibility as determined by Agency, necessary and adequate to fulfill the obligations undertaken in this Agreement by Redeveloper (or, in the event the transfer is of or relates to part of the Property, such obligations to the extent that they relate to such part);

18.3.2   any proposed transferee, by instrument in writing satisfactory to Agency and in form recordable among the land records, shall, for itself and its successors and assigns, and expressly for the benefit of Agency, have expressly assumed all of the obligations of Redeveloper under this Agreement and agreed to be subject to all the conditions and restrictions to which Redeveloper is subject: Provided, that the fact that any transferee of, or any other successor in interest whatsoever to, the Property shall, whatever the reason, not have assumed such obligations or so agreed, shall not (unless and only to the extent otherwise specifically provided in this Agreement or agreed to in writing by Agency) relieve or except such transferee or successor of or from such obligations, conditions, or restrictions, or deprive or limit Agency of or with respect to the Property or the construction of the Improvements: it being the intent of this, together with other provisions of the Agreement, that to the fullest extent permitted by law and equity and excepting only in the manner and to the extent specifically provided otherwise in the Agreement) no transfer of, or change with respect to, ownership in the Property or any part thereof, or any interest therein, however consummated or occurring, and whether or not voluntary shall operate, legally or practically, to deprive or limit Agency of or with respect to any rights or remedies or controls provided in or resulting from this Agreement with respect to the Property and the construction of the Improvements that Agency would have had, had there been no such transfer or change;

18.3.3   There shall be submitted to Agency for review all instruments and other legal documents involved in effecting transfer; and if approved by Agency, then its approval shall be indicated to Redeveloper in writing;

*18.3.4*  The consideration payable for the transfer by the transferee or on its behalf shall not (prior to the issuance of the Certificate of Completion, after which such prohibition shall be deemed null and void) exceed an amount representing the actual cost (including carrying charges) to Redeveloper of the Property (or allocable to the part thereof or interest therein transferred) and the Improvements, if any, theretofore made thereon by it; it being the intent of this provision to preclude assignment of this Agreement or transfer of the Property (or any parts thereof) for profit prior to the completion of the Improvements and to provide that in the event any such assignment or transfer is made (and is not canceled), Agency shall be entitled to increase the Purchase Price to Redeveloper by the amount that the consideration payable for the assignment or transfer is in excess of the amount that may be authorized pursuant to this subdivision (d), and such consideration shall, to the extent it is in excess of the amount so authorized, belong to and forthwith be paid to Agency, and

*18.3.5*  The Redeveloper and its transferee shall comply with such other conditions as Agency may find desirable in order to achieve and safeguard the purposes of the Urban Renewal Act and this Agreement.  Provided, that in the absence of specific written agreement by Agency to the contrary, no such transfer or approval by Agency thereof shall be deemed to relieve Redeveloper, or any other party bound in any way by this Agreement or otherwise with respect to the construction of the Improvements, from any of its obligations with respect thereto.

*18.4 Syndication.*  It is understood and agreed that, notwithstanding the provisions of Section 18.2  and Section 18.3 hereof, a majority of Redeveloper may be syndicated to limited partners the identity of whom is as yet undetermined and nothing contained in Section 18.2 or Section 18.3 shall be construed or interpreted to prohibit such syndication nor shall anything in Section 18.2 or Section 18.3 be construed or interpreted to require Agency's approval of the identity of, or transfers by and between, the limited partners.  Such syndication is authorized hereby in accordance with Section 18.3.2

provided that same shall in no way limit or impede the obligation of Redeveloper to initiate and complete the redevelopment project hereinabove described and shall in no way limit or impede any and all of the rights and remedies available to Agency, at law or in equity, pursuant to this Agreement or to law.   It is further understood and agreed that this Agreement shall be made part of any syndication offering and that, in the event of any conflict between this Agreement and any other document, agreement or instrument resulting from such syndication the terms and provisions of this Agreement shall control.   It is also understood and agreed that, except as set forth herein, no limited partner nor any executor, administrator, heir, transferee or assign of such partner, consequent to such syndication, shall have any claim of any kind whatsoever, at law or in equity, against Agency and the Managing General Partner does hereby covenant, promise and agree to indemnify and hold harmless Agency and all of its commissioners, agents, servants and employees against any and all claims, demands and suits of any kind whatsoever brought or initiated for any reason whatsoever by any partner and/or any executor, administrator, heir, transferee or assign or such partner.

18.5   *Permission to Assign.*   Notwithstanding anything set forth herein to the contrary, the Redeveloper shall have the right to assign this Agreement and the rights set forth herein to a New Jersey limited dividend entity which, in turn, may ground lease the Property to (1) an operating entity in which either Dranoff Properties, Inc. is the sole member or to a limited partnership where the controlling interest in the general partner is owned by Carl E. Dranoff or Dranoff Properties, Inc. or (2) an operating entity which is reasonably acceptable to the Agency.

## 19. *Mortgage Financing; Rights of Mortgagees*

19.1 *Limitation upon Encumbrance of Property.*   Prior to the completion of the Improvements as certified by Agency, neither Redeveloper nor any successor in interest to the Property or any part thereof shall engage in any financing or any other transaction creating any mortgage or other encumbrance or lien upon the Property, whether by express agreement or operation of law or

suffer any encumbrance or lien to be made on or attach to the Property, except for the purposes of obtaining:  (1) funds only to the extent necessary for making the Improvements and  (2) such additional funds, if any, in an amount not to exceed the Purchase Price paid by Redeveloper to Agency.   The Redeveloper (or successor in interest) shall notify Agency in advance of any financing, secured by mortgage or other similar lien instrument, it proposes to enter into with respect to the Property, or any part thereof, and in any event it shall promptly notify Agency of any encumbrance or lien that has been created on or attached to the Property whether by voluntary act of Redeveloper or otherwise.

**19.2 *Mortgage not Obligated to Construct.***  Notwithstanding any of the provisions of the Agreement, including but no limited to those which are or are intended to be covenants running with the land, the holder of any mortgage authorized by this Agreement (including any such holder who obtains title to the Property or nay part thereof as a result of foreclosure proceedings, or action in lieu thereof, but not including:  (1) any other party who thereafter obtains title to the Property of such part from or through such holder or  (2) any other purchaser at foreclosure sale other than the holder of the mortgage itself) shall in no wise be obligated by the provisions of this Agreement to construct or complete the Improvements or to guarantee such construction or completion, nor shall any covenant or any other provision in the Deed be construed to so obligate such holder: Provided, that nothing in this Provision or any other provision of this Agreement shall be deemed or construed to permit or authorize any such holder to devote the Property or any part thereof to any uses, or to construct an improvements thereon other than those uses or improvements provided or permitted in the Urban Renewal Plan and in the Agreement.

*19.3*  Whenever the Agency shall deliver any notice or demand to Redeveloper with respect to any breach or default by the redeveloper in its obligations or covenants under the Agreement, Agency shall at the same time forward a copy of such notice or demand to each holder shown in the records of Agency which holder shall have a reasonable period of time to cure such breach or default.

*19.4* After any breach or default referred to herein, each such holder shall (insofar as the rights of the Agency are concerned) have the right, at its option, to cure or remedy such breach or default (or such breach or default to the extent that it relates to the part of the Property covered by its mortgage) and to add the cost thereof to be mortgage debt and the lien of its mortgage: Provided, that if the breach or default is with respect to construction of the Improvements, nothing contained in this Provision or any other Provision of this Agreement shall be deemed to permit or authorize such holder, either before or after foreclosure or action in lieu thereof, to undertake or continue the construction or completion of the Improvements (beyond the extent necessary to conserve or protect Improvements or construction already made) without first having expressly assumed the obligation to Agency, by written agreement reasonably satisfactory to the agency, to complete, in the manner provided in the Agreement, the Improvements on the Property or the part thereto which the lien or title of such holder relate.   Any such holder who shall properly complete the Improvements relating to the Property or applicable part thereof shall be entitled, upon written request made to the agency, to certification or certifications by the agency to such effect in the manner provided in Section 16.4 of this Agreement, and any such certification shall, if so requested by such holder, mean and provide that any remedies or rights with respect to recapture of or reversion or revesting of title to the Property that Agency shall have or be entitled to because of failure of Redeveloper or any successor in interest to the Property, or any part thereof, to cure or remedy and default with respect to the construction of the Improvements on other part or parcels of the Property, or because of any other default in or breach of this Agreement by Redeveloper or such successor, shall not apply to the part or parcel of the Property to which such certification relates.

*19.5 Agency's Option to Pay Mortgage Debt or Purchase Property.*
In any case, where, subsequent to default or breach by Redeveloper (or successor in interest) under the Agreement, the holder of any mortgage on the Property or part thereof:

> **(1)** has, but does not exercise, the option to construct or

complete the Improvements relating to the Property or part thereof covered by its mortgage or to which it has obtained title, and such failure continues for a period of ninety (90) days after the holder has been notified or informed of the default or breach; or

(2) undertakes construction or completion of the Improvements but does not complete such construction within the period as agreed upon by Agency and such holder (which period shall in any event be at least as long as the period prescribed for such construction or completion in the Agreement), and such default shall not have been begun to be cured within sixty (60) days and diligently prosecuted to completion after written demand by Agency to do so, the Agency may (and every mortgage instrument made prior to completion of the Improvements with respect to the Property by Redeveloper or successor in interest shall so provide) pay to the holder the amount of the mortgage debt and securing an assignment of the mortgage and the debt secured thereby, or, in the event ownership of the Property (or part thereof) has vested in such holder by way of foreclosure or action in lieu thereof, Agency shall be entitled, at its option, to a conveyance to it of the Property or part thereof (as the case may be) upon payment to such holder of an amount equal to the sum of:    **(1)** the mortgage debt (including any prepayment penalty) at the time of foreclosure or action in lieu thereof (less all appropriate credits, including those resulting from collection and application of rentals and other income received during foreclosure proceedings),    **(2)** all expenses with respect to the foreclosure,    **(3)** the net expense, if any (exclusive of general overhead), incurred by such holder in and as a direct result of the subsequent management of the Property,    **(4)** the costs of any Improvements made by such holder, and    **(5)** and amount equivalent to the interest that would have accrued on the aggregate of such amounts had all such amounts become part of the mortgage debt and such debt had continued in existence.

*19.6 Agency's Option to Cure Mortgage Default.*  In the event of a default or breach prior to the completion of the Improvements by

Redeveloper, or any successor interest, in or of any of its obligations under, and to the holder of, any mortgage or other instrument creating an encumbrance or lien upon the Property or part thereof, Agency may at its option cure such default or breach, in which case Agency shall be entitled, in addition to and without limitation upon any other rights or remedies to which it shall be entitled by the Agreement, operation of law, or otherwise, to reimbursement from Redeveloper or successor in interest of all costs and expenses incurred by Agency in curing such default or breach and to a lien upon the Property (or the part thereof to which the mortgage, encumbrance, or lien relates) for such reimbursement: Provided, that any such lien shall be subject always to the lien of (including any lien contemplated, because of advances yet to be made, by) any then existing mortgages on the Property authorized by the Agreement.

19.7 *Mortgage and Holder.*  For the purpose of the Agreement, the term *mortgage* shall include a deed of trust or other instrument creating an encumbrance or lien upon the Property, or any part thereof, as security for a loan.  the term *holder* in reference to a mortgage shall include any insurer or guarantor of any obligation or condition secured by such mortgage or deed of trust, including, but not limited to, the Federal Housing Commissioner, the Administrator of Veterans Affairs, and any successor in office of either such official.

## 20. *Remedies.*

20.1 *In General.*  Except as otherwise provided in the Agreement, in the event of any default in or breach of the Agreement, or any of its terms or conditions, by either party hereto, or any successor to such party, such party (or successor) shall, upon written notice from the other, proceed immediately to cure or remedy such default or breach, and, in any event, within sixty (60) days after receipt of such notice.  This time period is to be extended as long as such party is diligently attempting to cure such breach.  In case such action is not taken or not diligently pursued, or the default or breach shall not be cured or remedied within a reasonable time, the aggrieved party may institute such proceedings as may be

necessary or desirable in its opinion to cure and remedy such default or breach, including, but not limited to, proceedings to compel specific performance by the party in default or breach of its obligations.

**20.2  *Termination by Redeveloper Prior to Conveyance.*** In the event that the Agency does not tender conveyance of the Property, or possession thereof, in the manner and condition, and by the date, provided in the Agreement, and any such failure shall not be cured within thirty (30) days after the date of written demand by the Redeveloper then the Redeveloper shall have the option to (1) terminate this Agreement by written notice thereof to Agency, and, in such event, neither the Agency nor the Redeveloper shall have any further rights against or liability of any kind whatsoever to the other under the Agreement or (2) provided the Redeveloper is not in default of any of the terms or conditions of this Agreement, seek specific performance of same in the Chancery Division of the Superior Court of New Jersey.

**20.3  *Termination by Agency Prior to Conveyance.***

> **20.3.1**  In the event that, after the expiration of all applicable notice and grace periods, prior to conveyance of the Property to the Redeveloper and in violation of this Agreement

>> **20.3.1.1.**  Redeveloper (or any successor in interest) assigns or attempts to assign this Agreement or any rights therein, or in the Property; or

>> **20.3.1.2.**  Except as otherwise permitted herein, there is any change in the ownership or distribution of the ownership of the general partner of the Redeveloper, or with respect to the identity of the parties in control of the general partner or the degree thereof; or

> **20.3.2**  The Redeveloper does not submit Construction plans, as required by the Agreement; or

> **20.3.3**  The Redeveloper does not pay the Purchase Price

and take title to the Property upon tender of conveyance by Agency pursuant to the Agreement, and if any default or failure referred to in subdivisions (b) and (c) of this Provision is not cured within sixty (60) days after the date of written demand by Agency, or such later date if the Redeveloper is diligently attempting to cure such default or failure then the Agreement, and any rights of Redeveloper, or any assignee or transferee, in the Agreement, or arising therefrom with respect to Agency or the Property, shall, at the option of Agency, be terminated by Agency, in which event, the Deposit shall be retained by Agency as liquidated damages and as its property without any deduction, offset, or recoupment whatsoever, which retention shall be the agency's sole remedy against Redeveloper, and neither Redeveloper (or assignee or transferee) nor Agency shall have any further rights against or liability to the other under the Agreement.

20.4  *Title Subject to Condition Subsequent.* If after the conveyance of the Property or any part thereof to Redeveloper and before the completion of the Improvements as certified by Agency:

(1) The Redeveloper (or successor in interest) shall default in or violate its obligations with respect to the Improvements (including the nature and the dates for the beginning and completion thereof), or shall abandon or substantially suspend construction work, and any such default, violation, abandonment, or suspension not a result of *force majeure* shall not be cured, ended, or remedied within three (3) months ( or six (6) months, if the default is with respect to the date for completion of the Improvements) after written demand by the Agency so to do; or

(2) The Redeveloper (or successor in interest) shall fail to pay real estate taxes or assessments on the Property or any part thereof when due, or shall place thereon any encumbrance or lien unauthorized by this Agreement, or shall suffer any levy

or attachment to be made, or any materialmen's or mechanic's lien, or any other unauthorized encumbrance or lien for which a bond has not been provided to attach, and such taxes or assessments shall not have been paid, or the encumbrance or lien removed or discharged or provision satisfactory to the agency, made for such payment, removal, or discharge, within ninety (90) days after written demand by Agency so to do; or

(3) There is, in violation of the Agreement, any transfer of the Property or any part thereof, or any change in the ownership or distribution of the partnership interests of Redeveloper, or with respect to the identity of the parties in control of Redeveloper or the degree thereof, and such violation shall not be cured within sixty (60) days after written demand by Agency to Redeveloper, then Agency may re-enter and take possession of the Property and to terminate (and revest in Agency) the estate conveyed by the Deed to Redeveloper, it being the intent of this provision, together with other provisions of the Agreement, that the conveyance of the Property to Redeveloper shall be made upon, and that the Deed shall contain, a condition subsequent to the effect that in the event of any default, failure, violation, or other action or inaction by Redeveloper specified in subdivisions (a ), (b) and (c) of this Provision , failure on the part of Redeveloper to remedy, end, or abrogate such default, failure, violation, or other action or inaction, within the period and in the manner stated in such subdivision, Agency of the title, and of all the rights and interests in and to the Property conveyed by the Deed to Redeveloper, and that such title and all rights and interests of Redeveloper, and any assigns or successors in interest to and in the Property, shall revert to Agency: Provided, that such condition subsequent and any revesting of title as a result thereof in Agency shall always be subject to and limited by, and shall not defeat, render invalid, or limit in any way, the lien of any mortgage authorized by the Agreement, or any rights or interests provided in this Agreement for the protection of the holders of such mortgages.

**20.5** ***Resale of Reacquired Property; Disposition of Proceeds.*** Upon the revesting in Agency of title to the Property or any part thereof as provided in Provision , Agency shall, pursuant to its responsibilities under State Law, use its best efforts to resell the Property or part thereof (subject to such mortgage liens and leasehold interests as in Provision  set forth and provided) as soon and in such manner as Agency shall find feasible and consistent with the objectives of such law and of the Urban Renewal Plan to a qualified and responsible party or parties (as determined by Agency) who will assume the obligation of making or completing the Improvements or such other improvements in their stead as shall be satisfactory to Agency and in accordance with the uses specified for such Property, the proceeds thereof shall be applied:

(1) First, to reimburse Agency, on its own behalf or on behalf of the City, for all costs and expenses incurred by Agency, including but not limited to salaries of personnel, in connection with the recapture, management, and resale of the Property or part thereof (but less any income derived by Agency from the Property or part thereof in connection with such management); all tax assessments, and water and sewer charges with respect to the Property or part thereof (or, in the event the Property is exempt from taxation or assessment or such charges during the period of ownership thereof by Agency, and amount if paid, equal to such taxes, assessments, or charges (as determined by the City assessing official as would have been payable if the Property were not so exempt), any payments made or necessary to be made to discharge any encumbrances or liens on the Property or part thereof at the time of revesting of title thereto in Agency or to discharge or prevent from attaching or being made any subsequent encumbrances or liens due to obligations, defaults, or acts of Redeveloper, its successors or transferees, any expenditures made or obligations incurred with respect to the making or completion of the Improvements or any part thereof on the Property or part thereof, and any amounts otherwise owning Agency by Redeveloper and its successor or transferee; and

(2)    Second, to reimburse Redeveloper its successor or transferee, up to the amount equal to: **(1)** the sum of the purchase price paid by it for the Property (or allocable to the part thereof) and the cash actually invested by it in making any of the Improvements on the Property or part thereof, less **(2)** any gains or income withdrawn or made by it from this Agreement or the Property.

any balance remaining after such reimbursement shall be retained by Agency as its property.

**20.6  *Other Rights and Remedies of the Agency; No Waiver by Delay.*** Agency may institute such actions or proceedings as it may deem desirable for effectuating the purposes of this Article, including also the right to execute and record or file among the public land records in the office in which the Deed is recorded a written declaration of the termination of all the right, title, and interest of Redeveloper, and (except for such individual parts or parcels upon which construction of that part of the Improvements required to be constructed thereon has been complete, in accordance with the Agreement, and for which a certificate of completion as provided in Provision  hereof is to be delivered; and subject to such mortgage liens and leasehold interest and assigns, in the Property, and the revesting of title thereto in Agency: Provided, that any delay by Agency in instituting or prosecuting any such actions or proceedings or otherwise asserting its rights under this Article shall not operate as a waiver of such rights or to deprive it of or limit such rights in any way; nor shall any waiver in fact made by Agency with respect to any specific default by Redeveloper under this Provision be considered or treated as a waiver of the rights of Agency with respect to any other defaults by Redeveloper under this Provision with respect to the particular default except to the extent specifically waived in writing.

**20.7  *Enforced Delay in Performance for Causes Beyond Control of Party.*** For the purposes of any of the provisions of the Agreement, neither Agency nor Redeveloper, as the case may be, nor any successor in interest, shall be considered in breach of, or default in, its obligations with respect to the preparation of the Property for redevelopment, or the beginning and completion of construction of

the Improvements, or progress in respect thereto, in the event of enforced delay in the performance of such obligation due to unforeseeable causes beyond its control and without its fault or negligence, including, but not restricted to, acts of God, acts of the public enemy, acts of the Federal Government, acts of the other party, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, it being the purpose and intent of this provision that in the event of the occurrence of any such enforced delay, the time or times for performance of the obligations of Agency with respect to the preparation of the Property for redevelopment or of Redeveloper with respect to construction of the Improvements, as the case may be, shall be extended for the period of the enforced delay as determined by Agency: Provided, that the party seeking the benefit of the provisions of this Provision shall, within a reasonable period of time after the beginning of any such enforced delay, have first notified the other party thereof in writing, and of the cause or causes thereof, and requested an extension for the period of the enforced delay.

**20.8** *Rights and Remedies Cumulative.* The rights and remedies of the parties to the Agreements, whether provided by law or by the Agreement, shall be cumulative, and the exercise by either party of any one or more of such remedies shall not preclude the exercise by it, at the same or different times, of any other such remedies for the same default or breach or of any of its remedies for any other default or breach by the other party. No waiver made by either such party with respect to the performance, or manner or time thereof, or any obligation of the other party or any condition to its own obligation under this Agreement shall be considered a waiver of any rights of the party making the waiver with respect to the particular obligation of the other party or condition to its own obligation beyond those expressly waived in writing and to the extent thereof, or a waiver in any respect in regard to any other rights of the party making the waiver or any other obligations of the other party.

**20.9** *Party in Position of Surety with Respect to Obligations.* The Redeveloper for itself and its successors and assigns, and for all

other persons who are or who shall become, whether by express or implied assumption or otherwise, liable upon or subject to any obligation or burden under the Agreement, hereby waives, to the fullest extent permitted by law and equity, any and all claims or defenses otherwise available on the ground of its (or their) being or having become a person in the position of a surety, whether real, personal or otherwise or whether by agreement or operation of law, including, without limitation on the generality of the foregoing, any and all claims and defenses based upon extension of time, indulgence, or modification of terms of contract.

## 21. Miscellaneous

### 21.1 Conflicts of Interest.
No member, official, or employee of the agency shall have any personal interest, direct or indirect, in the Agreement, nor shall any such member, official, or employee participate in any decision relating to this Agreement which affects his personal interests or the interests of any corporation, partnership, or association in which he is, directly or indirectly, interested. No member, official, or employee of Agency shall be personally liable to Redeveloper, or any successor in interest, in the event of any default or breach by Agency or for any amount which may become due to Redeveloper or successor or on any obligations under the terms of the Agreement.

### 21.2 Equal Employment Opportunity.
The Redeveloper, for itself and its successors and assigns, agrees that during the construction of the Improvements provided for in the Agreement:

i) the Redeveloper will not discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin. the Redeveloper will take affirmative action to ensure that applicants are employed, and that employees are treated during employment; without regards to their race, color religion, sex or national origin. such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training,

including apprenticeship. the Redeveloper agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by Agency setting forth the provisions of this nondiscrimination clause;

ii) the Redeveloper will, in all solicitations or advertisements for employees placed by or on behalf of Redeveloper, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin;

iii) the Redeveloper will send to each labor union or representative of workers with which Redeveloper has a collective bargaining agreement or other contract or understanding, if any, a notice, to be provided, advising the labor union or workers' representative of Redeveloper's commitments under Section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

iv) the Redeveloper will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

v) the Redeveloper will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, and by the rules, regulations and orders of the Secretary of Labor or the Secretary of Housing and Urban Development pursuant thereto, and will permit access to Redeveloper's books, records, and accounts by Agency, the Secretary of Housing and Urban Development, and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

vi) In the event of Redeveloper's noncompliance with the nondiscrimination clauses of this Provision, or with any of the said rules, regulations or orders, this Agreement may be canceled, terminated, or suspended in whole or in part and Redeveloper may be declared ineligible for further Government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order

11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law;

vii) the Redeveloper will include the provisions of Paragraphs (a) through (g) of this Provision in every contract or purchase order, and will require the inclusion of these provisions in every subcontract entered into by any of its contractors, unless exempted by rules and regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each such contractor, subcontractor, or vendor, as the case may be;

viii) the Redeveloper will take such action with respect to any construction contract, subcontract, or purchase order as Agency or the Department of Housing and Urban Development may direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, that in the event Redeveloper becomes involved in litigation or is threatened with litigation brought by a contractor or vender as a result of such direction by Agency or the Department of Housing and Urban Development, Redeveloper may request the United States to enter into such litigation to protect the interests of the United States.   For the purpose of including such provisions in any construction contract, subcontract, or purchase order, as required hereby, the first three lines of this Provision shall be changed to read "During the performance of this Contract, the Contractor agrees as follows:" and the term *Redeveloper* shall be changed to *Contractor*;

ix) the Redeveloper further agrees that it will be bound by the above equal opportunity clause with respect to its own employment practices when it participates in federally assisted construction work: Provided, that if Redeveloper so participating is a State or local government, the above equal opportunity clause   is   not   applicable   to any agency, instrumentality or subdivision of such government which does not participate in work on or under the contract;

x) the Redeveloper agrees that it will assist and coöperate actively with the administering agency and the Secretary of Labor in obtaining the compliance of contractors and subcontractors with the equal opportunity clause and the rules, regulations, and relevant orders of the Secretary of Labor, that it will furnish the administering agency and the Secretary of Labor such information as they may require for the supervision of such compliance, and that it will otherwise assist the administering agency in the discharge of the agency's primary responsibility for securing compliance; and

xi) the Redeveloper further agrees that it will refrain from entering into any contract or contract modification subject to Executive Order 11246 of September 24, 1965, with a contractor debarred from, or who has not demonstrated eligibility for, Government contracts and federally assisted construction contracts pursuant to the Executive Order and will carry out such sanctions and penalties for violation of the equal opportunity clause as may be imposed upon contractors and subcontractors by the administering agency or the Secretary of Labor pursuant to Part II, Subpart D of the Executive Order. In addition, Redeveloper agrees that if it fails or refuses to comply with these undertakings, then the administering agency may take any or all of the following actions: Cancel, terminate, or suspend in whole or in part this grant (contract, loan, insurance, guarantee), refrain from extending any further assistance to Redeveloper under the program with respect to which the failure or refund occurred until satisfactory assurance of future compliance has been received from such Redeveloper, and refer the case to the Department of Justice for appropriate legal proceedings.

**21.3 *Provisions not Merged with Deed.*** None of the provisions of this Agreement are intended to or shall be merged by reason of any deed transferring title to the property from Agency to Redeveloper or any successor in interest, and any such deed shall not be deemed to affect or impair the provisions and covenants of the Agreement.

**21.4 *Titles of Articles and Sentences.*** Any titles of the several parts, Articles, and Provisions of this Agreement are inserted for

convenience of reference only and shall be disregarded in construing or interpreting any of its provisions.

**21.5  *Applicability of Laws.*** Notwithstanding any other provision contained herein all statutes, laws, ordinances, rules and regulations of the United States of America, the State of New Jersey and the City of Camden shall be applicable to and binding on all parties to this Agreement and their successors and assigns to the fullest enforceable extent.

**21.6  *Consent of the Agency.*** Whenever the consent of the Agency is required by this Agreement such consent shall not be unreasonably withheld or delayed. If such consent is denied the statement of such denial shall state the reason therefor with specificity. The failure of the Agency to consent or deny within thirty (30) days of the request so to do shall be conclusively deemed to constitute consent.

**22. *Indemnification by Agency.*** The Agency shall indemnify the Redeveloper and its permitted assigns against any loss attributable to the Agency's prevention of, or interference with, the issuance of the necessary licenses, and permits prior, or subsequent, to closing except as such actions may be taken in accordance with this Agreement.

**In Witness Whereof,**

the parties have caused this Agreement to be executed by their proper officers and to have their respective seals affixed hereto on the day and year first above written.

CITY OF CAMDEN
REDVELOPMENT AGENCY

By: *Christine Hickman*
CHRISTINE HICKMAN
Chairperson

Page 33 of 34

ATTEST:

_____
MARTIN F. McKERNAN, JR.


DRANOFF PROPERTIES, INC.

By _____


ATTEST:

_____

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

**PARCEL A**

All that certain tract or parcel of land situate in the City of Camden, County of Camden and State of New Jersey bounded and described as follows:

Beginning at the point of intersection of the southeasterly line of Delaware Avenue, (60 feet wide) and the southwesterly line of Cooper Street, (100 feet wide), as shown on a certain map hereinafter mentioned and from said beginning point extending thence;

(1)     S75°38'33"E, measured along the southwesterly line of Cooper Street, 438.20 feet to the point of intersection of same with the northwesterly line of Front Street, (60 feet wide), thence;

(2)     S13°30'33"W, measured along the northwesterly line of Front Street, 361.84 feet to the point of intersection of same with the northeasterly line of Market Street, (80 feet wide), thence;

(3)     N75°34'05"W, measured along the northeasterly line of Market Street, 443.65 feet to the point of intersection of same with the southwesterly line of Delaware Avenue, as aforementioned, thence;

(4)     N14°22'22"E, measured along the southwesterly line of Delaware Avenue, 361.23 feet to the point and place of beginning.

Containing within said bound 3.659 acres of land more or less.

Being all of Lots 2, 4, 8, 9 and 17, Block 71, as shown on Plate 14 of The Official Tax Assessment Map of the City of Camden.

Being the same lands and premises as shown on a certain map entitled "Plan of lands for Cooper's Ferry Development Association", dated May 2, 2001 as prepared by Reutter Engineering, Two Executive Campus, Suite 320, Route 70 West and Cuthbert Boulevard, Cherry Hill, New Jersey, 08002 and marked as file No. CFDA4755.

**PARCEL B**

All that certain tract or parcel of land situate in the City of Camden, County of Camden and State of New Jersey bounded and described as follows:

Beginning at the point of intersection of the southeasterly line of Front Street, (60 feet wide) and the northeasterly line of Market Street, (80 feet wide),  as shown on a certain map hereinafter

A-1

mentioned and from said beginning point extending, thence;

(1)    N13°30'33"E, measured along the southeasterly line of Front Street, 247.88 feet to a point in same, corner to proposed Lots 1 and 38, Block 72, as shown on said map, thence;

(2)    S75°38'55"E, measured along division line between proposed Lots 1 and 38, Block 72, 174.33 feet to a point corner to same in the line of Lot 9, Block 72, being lands now or formerly of New Jersey Transit, thence;

(3)    S13°20'15"W, measured along the line of Lot 9, Block 72, 66.44 feet to a point corner to same and also corner to proposed Lot 28, Block 72, as shown on said map, thence;

(4)    S14°36'20"W, measured along the division line between proposed Lots 28 and 38, Block 72, 182.18 feet to a point corner to same in the northeasterly line of Market Street, as aforementioned, thence;

(5)    N75°23'40"W, measured along the northeasterly line of Market Street, 171.05 feet to the point and place of beginning.

Containing within said bound 0.987 acres of land more or less.

Being all of proposed Lot 38, Block 72 as shown on a certain map entitled "Plan of Proposed Resubdivision for Cooper's Ferry Development Association, Block 72, Lots 1, 28 and 38, No. 114-120 North Front Street, situate in City of Camden, Camden County, N.J.", dated June 19, 2001 and revised to July 30, 2001 as prepared by Perks Reutter Associates, Two Executive Campus, Suite 320, Route 70 West and Cuthbert Boulevard, Cherry Hill, New Jersey, 08002, and marked as file number, CFDA4755-019.

106771.00406/11153132v2