```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| VICTOR URBAN RENEWAL GROUP LLC and DRANOFF PROPERTIES, INC., | 1:18-cv-10841-NLH-AMD |
| | **OPINION** |
| Plaintiffs, | |
| v. | |
| THE CITY OF CAMDEN, et al., | |
| Defendants. | |

**APPEARANCES**:

AARON RICHARD KRAUSS
COZEN O'CONNOR
1650 MARKET STREET
Ste. 2800
PHILADELPHIA, PA 19103
    On behalf of Plaintiff

MICHAEL J. WATSON
WILLIAM M. TAMBUSSI
BROWN & CONNERY, LLP
360 HADDON AVE
P.O. BOX 539
WESTMONT, NJ 08108
    On behalf of Defendants

**HILLMAN, District Judge**

This matter concerns claims by Plaintiffs, Victor Urban Renewal Group LLC and Dranoff Properties, Inc., against the City of Camden, among others, arising out of Plaintiffs' attempt to sell The Victor Building in Camden, New Jersey. Plaintiffs allege:

> Victor Urban Renewal Group LLC came into the City of
> Camden almost 16 years ago - long before any other
> major developers even considered the possibility of
> doing business in Camden -  to redevelop The Victor
> Building, a blighted and long-abandoned RCA
> manufacturing facility on Camden's waterfront, into a
> thriving luxury apartment building.  Despite being
> turned down by 49 banks, Victor Urban Renewal was able
> to complete the redevelopment and make The Victor
> Building the keystone of Camden's revival.  Absent the
> tax exemptions granted by the City of Camden, Victor
> Urban Renewal would not have been able to do so.
> However, in a classic bait-and-switch, now that Victor
> Urban Renewal has signed a contract to sell The Victor
> Building for more than $71 million to Aimco One Market
> Street Urban Renewal, LLC, the City of Camden, through
> its officials such as Jason Asuncion and Michelle
> Banks-Spearman, has refused to keep up its end of the
> bargain and transfer the tax exemptions as it
> contractually promised to do."

(Amended Complaint, Docket No. 7 at 1-2.)

Plaintiffs claim that the City of Camden has breached its contractual obligations and has deprived Victor Urban Renewal of its property without due process of law.  Plaintiffs also claim that in an effort to exert pressure on Victor Urban Renewal, the City of Camden has acted in concert with the Camden Redevelopment Agency to deny a related company – Dranoff Properties, Inc. – the benefit of its option to buy the Radio Lofts building in Camden.[1]  (Id. at 2.)

Plaintiffs filed their original complaint on June 20, 2018.

---

[1] Plaintiffs have brought claims pursuant to 42 U.S.C. § 1983 and New Jersey state law.  This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

Defendants filed a motion to dismiss on July 2, 2018.  On July 20, 2018, Plaintiffs filed an amended complaint.  Defendants renewed their motion to dismiss on August 3, 2018, and that motion is pending before the Court.  In addition to challenging the sufficiency of Plaintiffs' claims under Federal Civil Procedure Rule 12(b)(6), Defendants' main basis for the dismissal of Plaintiffs' complaint is the forum selection clause in the parties' agreements.  Defendants argue that the forum selection clause requires any dispute between the parties to be brought in New Jersey state court, and failing that, submitted to arbitration.  On August 9, 2018, Plaintiffs filed their opposition to Defendants' motion, arguing, among other things, that the forum selection clause is permissive and not mandatory, thus causing their complaint filed in this Court to be proper.

While Defendants' motion has been pending, Defendants filed a complaint against Plaintiffs in New Jersey Superior Court, Law Division, Camden County on December 10, 2018.  See City of Camden, et al. vs Victor Urban Renewal, LLC, et al., Docket No. CAM-L-004612-18.  On December 13, 2018, Victor Urban Renewal moved to dismiss the City of Camden's state court complaint, arguing that under the entire controversy doctrine, Camden should have filed counterclaims in this action rather than institute a separate action in New Jersey state court.  The state court judge denied that motion on January 11, 2019.

3

On January 22, 2019, Victor Urban Renewal filed an answer in the state court action and asserted a counterclaim complaint against the City of Camden.[2] On March 18, 2019, the state court judge ordered the case to proceed with discovery.

This Courts sets forth the procedural history in this Court and state court because it compels the dismissal of this action for two reasons – the forum selection clause in the parties' agreement and the Younger abstention doctrine.

**1. Forum Selection Clause**

The Court must dismiss Plaintiffs' complaint pursuant to the parties' forum selection clause in their agreement because the Court is constrained to follow the New Jersey Supreme Court's interpretation of the exact same forum selection clause in an urban renewal agreement containing tax exemptions.

The forum selection clause in the parties' agreement provides:

> In the event of a breach of the within Agreement by either of the parties hereto or a dispute arising, between the parties in reference to the terms and provisions as set forth herein, either party may apply to the Superior Court of New Jersey by an appropriate proceeding, to settle and resolve said dispute in such fashion as will tend to

---

[2] On February 26, 2019, the City of Camden moved to dismiss one of Victor Urban Renewal's counterclaims. A motion hearing on the City's motion to dismiss was scheduled for March 15, 2019. Victor Urban Renewal filed an amended answer and amended counterclaims on March 11, 2019. On March 14, 2019, the City of Camden withdrew its motion to dismiss, and indicated that it reserved its right to renew its motion under the applicable rules.

>     accomplish the purpose of the Long Term Act.  In the event
>     the Superior Court shall not entertain jurisdiction, then
>     the parties shall submit the dispute to the American
>     Arbitration Association in Camden, New Jersey to be
>     determined in accordance with its rules and regulations. .
>     . .

(Financial Agreement ¶15(a), Docket No. 10-2 at 34-35.)

In McMahon v. City of Newark, 951 A.2d 185 (N.J. 2008), the New Jersey Supreme Court was tasked with interpreting the identical forum selection clause.[3] There, One Washington Urban Renewal Association (the "Entity") had entered into a financial agreement with the City of Newark concerning the construction of an urban renewal project. The agreement was governed by what is now called the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -22 ("LTTEL"), which provides for certain tax exemptions for the redeveloper.[4]

Due to various events, the City cancelled the tax abatement, and the receiver for the Entity filed a verified complaint in New Jersey Superior Court seeking (1) a declaratory judgment that "the purported cancellation of the tax abatement was wrongful and therefore null and void;" (2) an order requiring that the City, its finance department and its tax

---

[3] The only difference between the clause in McMahon and the one here is that in McMahon, any arbitration was to take place in New York.  McMahon, 951 A.2d at 188.

[4] As discussed below, the Long Term Tax Exemption Law governs the agreement between Plaintiffs and Defendants in this case.

5

assessor "reinstate the tax abatement retroactively ... and to rescind all tax bills issued subsequent to its purported cancellation of the tax abatement;" (3) an order requiring that the City issue restated tax bills and properly account for all payments made; (4) "[i]nterest, attorneys' fees and costs of suit;" and (5) such other relief "as the Court may deem just and proper." McMahon, 951 A.2d at 535-36.

Pursuant to a motion to dismiss filed by the City, the case was transferred to the Tax Court. Id. at 536. The City then moved for summary judgment, claiming that the cause was properly before the Tax Court, and that the statute of limitations barred the receiver's complaint. The receiver opposed that motion, arguing that because the action was one for breach of contract and not a tax appeal, it was not cognizable in the Tax Court. Id. The Tax Court agreed with the City and dismissed the case. Id. at 537. The appellate division affirmed. Id. at 539.

The New Jersey Supreme Court reversed the lower courts' decisions. The court explained that if the receiver's complaint had addressed the quantum or methodology applied in respect of the assessments issued by the City's tax assessor, his complaint would have fallen squarely within the band of cases subject to the established tax appeal process, thus implicating the tax appeal deadlines and the resulting lack of jurisdiction in the Tax Court because of the receiver's failure to file an appeal by

those deadlines. Id. at 543-44. The court found, however, that the receiver's complaint did not assert such claim, and instead found:

> At its core, this is a contract and estoppel case, nothing more. The nature of plaintiff's challenge does not speak to the issues uniquely cognizable within the tax appeal process, but to the more fundamental question of whether the tax assessor had the authority to determine unilaterally that the bargained-for tax abatement was no longer operative. Stated differently, plaintiff claims that the City breached the financial agreement when the tax assessor concluded that, because the Project had been transferred to the Trust and no "transfer of the tax abatement has been approved by the Newark Municipal Council," the financial agreement no longer was operative and the Project could be separately taxed and the Project placed "on the 1997 Added/Omitted Assessment List." . . . . [T]he controversy presented by plaintiff is not cognizable within the context of a tax appeal, but constitutes instead, in the plain words of the financial agreement, "a breach of the [financial a]greement by either of the parties hereto or a dispute arising between the parties in reference to the terms and provisions as set forth [t]herein[.]"

Id. at 544-45.

Because the plaintiff's claims against the City sounded in contract, the court looked to the parties' agreement, which provided that "the forum for the resolution of that breach of contract dispute was not by means of a tax appeal; Paragraph 7 of the financial agreement plainly sets forth that such dispute is cognizable in the Superior Court or, failing Superior Court jurisdiction, arbitration under the rules of the American Arbitration Association." Id. at 545. The court concluded that "the parties bargained for and settled on a forum to resolve

7

that breach or dispute: either the Superior Court or, failing that, arbitration.  We envision no reason these obviously sophisticated parties should not be bound by the covenants into which they freely and voluntarily entered.  We will enforce that bargain." Id. at 546.

Defendants in this case argue that the New Jersey Supreme Court's interpretation of the identical forum selection clause compels this Court to view it the same way, thus requiring dismissal of Plaintiffs' complaint because it was not filed in the bargained-for forum.  In their opposition, Plaintiffs argue that the McMahon case is distinguishable because the forum selection clause in that case was decided in the context of whether the tax court had jurisdiction over a case that did not constitute a tax appeal.  Plaintiffs further argue that the language in the forum selection clause regarding the forum for bringing suit is permissive rather than mandatory – that is, either party "may" apply to the Superior Court of New Jersey, not either party "shall" apply to the Superior Court of New Jersey.  Defendants respond that Plaintiffs' interpretation would render the forum selection clause meaningless because if the forum of New Jersey Superior Court was simply an option to other forums, there would be no purpose to the forum selection clause being in the agreement at all.

The Court does not discount Plaintiffs' argument that the

8

clause's use of the word "may" instead of "shall" connotes a permissive tone as to where a party "may apply" to "settle and resolve" their dispute, and that if the parties intended New Jersey Superior Court to be the only forum to resolve the dispute, the clause could have been easily drafted to be more definitive.  But as the court in McMahon observed, "[T]he judicial task is clear: the court must discern and implement the common intention of the parties [and its] role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the expressed general purpose."  McMahon, 951 A.2d at 197 (citation omitted).

This Court agrees with the New Jersey Supreme Court that the parties intended the forum in which to resolve any breach or dispute to be either the New Jersey Superior Court or, failing that, arbitration.[5]  The Court views the permissive nature of "may" as addressing a party's option of whether or not to bring a proceeding against the other party, rather than a party's option regarding where to bring that proceeding.  The forum selection clause would simply lose any rational purpose or

---

[5] Although federal law controls the question of whether to enforce a forum selection clause, "[Third Circuit] case law directs [a federal court] to use state law to determine the scope of a forum selection clause. . . ."  In re McGraw-Hill Global Education Holdings LLC, 909 F.3d 48, 58 (3d Cir. 2018) (citations omitted).

9

meaning if it were intended to state the obvious state of affairs without such a clause – namely that the parties could choose any forum to resolve their disputes.

Consequently, because the parties did not select this Court as a forum to resolve their dispute over their agreements, and New Jersey Superior Court is a viable forum, the Court must dismiss Plaintiffs' complaint. See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 571 U.S. 49, 66 (2013) (explaining that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," rather than through a transfer of venue under 28 U.S.C. § 1404(a), and "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations," and "[i]n all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain"); id. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."); see also Podesta v. Hanzel, 684 F. App'x 213, 216 (3d Cir. 2017) (referencing Atlantic Marine and finding

that although "a party may move under 28 U.S.C. § 1404(a) to transfer a case to another federal court based on a valid forum selection clause, a Rule 12(b)(6) dismissal is also an acceptable means of enforcing such a clause when the clause allows for suit in either a state or federal forum); Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001) (explaining that transfer is not available when a forum selection clause specifies a non-federal forum, and in that case, "it seems the district court would have no choice but to dismiss the action so it can be filed in the appropriate forum so long as dismissal would be in the interests of justice").

2. **Younger abstention doctrine**

Even if the forum selection clause was permissive as Plaintiffs argue and this Court is a proper venue for their case, the Court is compelled to abstain from considering the matter under Younger v. Harris, 401 U.S. 37 (1971).[6] The Younger abstention doctrine "reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Cresci v. BCB Community Bank, 728 F. App'x 145, 148 (3d Cir. 2018) (quoting Gwynedd Properties, Inc. v. Lower Gwynedd Twp., 970 F.2d 1195,

---

[6] Abstention doctrines may be raised by the court *sua sponte*. Gray v. Pagano, 287 F. App'x 155, 157 (3d Cir. 2008) (citing O'Neill v. City of Phila., 32 F.3d 785, 786 n.1 (3d Cir.1994)).

11

1200 (3d Cir. 1992) (internal quotation marks omitted)). A federal court should abstain under the Younger doctrine when there are (1) ongoing state proceedings that are judicial, (2) the proceedings implicate important state interests, and (3) the proceedings afford an adequate opportunity to raise the federal claims. Id. (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)) (other citation omitted). In these circumstances, federal courts should abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate[.]" Id. (quoting Middlesex County Ethics Comm., 457 U.S. at 435).

All three requirements for abstention under Younger are satisfied here, and there is no showing of bad faith, harassment, or other extraordinary circumstance to weigh against abstention. For the first factor, the same controversy between Plaintiffs and Defendants is currently pending in New Jersey state court. Even though the state court action was instituted several months after this action, the Younger abstention doctrine is still applicable when no "proceedings of substance on the merits" have taken place in federal court, and the federal action is still in its "embryonic stage." Tucker v. Ann Klein Forensic Center, 174 F. App'x 695, 697 (3d Cir. 2006) (quoting Hicks v. Miranda, 422 U.S. 332, 349 (1975); Doran v.

Salem Inn, Inc., 422 U.S. 922, 929 (1975); Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 238 (1984) (concluding that the federal action should be dismissed in favor of the state action if there have been no "proceedings on the merits . . . in the federal court")). Plaintiffs' amended complaint is at the motion to dismiss stage here, while the state court has denied Victor Urban Renewal's motion to dismiss the City's state court complaint against it in favor of the federal action, and the state court action has proceeded to discovery. Thus, the first element of abstention under Younger is satisfied.

As to the second factor, the heart of the dispute arises from tax exemptions provided under New Jersey's LTTEL. The LTTEL permits municipalities to "agree with private entities for the private entities to undertake redevelopment projects in return for tax exemptions," and "provides a new partnership between the public and private sectors to redevelop and rehabilitate New Jersey's urban centers, older suburbs, and other communities that are in need of redevelopment." N.J.S.A. 40A:20-1, Senate County and Municipal Government Committee Statement.[7]

---

[7] The LTTLE's Legislative findings and declarations further provide,

> The Legislature finds that in the past a number of laws have been enacted to provide for the clearance, replanning, development, and redevelopment of blighted areas pursuant

13

In Plaintiffs' complaint here, and in their counterclaims in New Jersey state court, Plaintiffs claim that the tax exemptions provided by the LTTEL enabled the redevelopment of The Victor Building, and the City of Camden's refusal to grant the transfer of the tax exemptions to a prospective buyer of The Victor Building is fatal to the sale. The City's claims against Victor Urban Renewal and its related entities also center around their alleged violations of the LTTEL, and it seeks a

---

> to Article VIII, Section III, paragraph 1 of the New Jersey Constitution. These laws had as their public purpose the restoration of deteriorated or neglected properties to a use resulting in the elimination of the blighted condition, and sought to encourage private capital and participation by private enterprise to contribute toward this purpose through the use of special financial arrangements, including the granting of property tax exemptions with respect to land and the buildings, structures, infrastructure and other valuable additions to and amelioration of land, provided that the construction or rehabilitation of buildings, structures, infrastructure and other valuable additions to and amelioration of land constitute improvements to blighted conditions. The Legislature finds that these laws, separately enacted, contain redundant and unnecessary provisions, or provisions which have outlived their usefulness, and that it is necessary to revise, consolidate and clarify the law in this area in order to preserve and improve the usefulness of the law in promoting the original public purpose.
>
> The Legislature declares that the provisions of this act are one means of accomplishing the redevelopment and rehabilitation purposes of the "Local Redevelopment and Housing Law," P.L.1992, c. 79 (C.40A:12A-1 et al.) through the use of private entities and financial arrangements pertaining thereto, and that this act should be construed in conjunction with that act.

N.J.S.A. 40A:20-2.

declaratory judgment for noncompliance with the terms of the parties' agreements, which were fashioned pursuant to the terms of the LTTEL.[8] (See CAM-L-004612-18 at Docket Entry 1.) The New Jersey's Legislature's oversight of how municipalities may offer tax incentives to private entities in exchange for redevelopment is an important interest of the State of New Jersey. See Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 F. App'x 232, 238 (3d Cir. 2009) (quoting New Orleans Pub. Serv. Inc. v. Council of New Orleans, 491 U.S. 350, 365 (1989)) (explaining that when evaluating Younger's second prong, a court must look to "the importance of the generic proceedings to the state," not to the specific concern of the particular proceeding).[9]

---

[8] See, e.g., N.J.S.A. 40A:20-9, Financial agreement; form and contents; N.J.S.A. 40A:20-10, Optional provisions of financial agreement; municipal consent to sale and continuation of exemption.

[9] As the New Jersey Supreme Court explained:

> Taxation of real property in New Jersey is of constitutional dimension. In addition to requiring that "[p]roperty shall be assessed for taxation under general laws and by uniform rules[,]" N.J. Const. art. VIII, § 1, ¶ 1(a), New Jersey's Constitution requires that "[a]ll real property assessed and taxed ... shall be assessed according to the same standard of value, [and] shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district." Ibid.
>
> A comprehensive statutory scheme seeks to implement that constitutional mandate. Thus, the Legislature has required

Finally, the third prong of Younger abstention is met because the state court action affords Plaintiffs the ability to raise their federal due process claims there. Younger requires only "an opportunity to present federal claims in a state proceeding," and the "burden on this point rests on the federal plaintiff to show that state procedural law bar[s] presentation of its claims." Lazaridis v. Wehmer, 591 F.3d 666, 670–71 (3d Cir. 2010) (quoting Juidice v. Vail, 430 U.S. 327, 337 (1977); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14–15 (1987)). By Plaintiffs already filing a counterclaim complaint in state court which includes claims under § 1983 for due process violations, it is clear that Plaintiffs are not barred from proceeding on those claims there. See Bennett v. White, 865 F.2d 1395, 1406 (3d Cir. 1989) ("State courts have concurrent jurisdiction with the federal courts over section 1983 actions.") (citing Testa v. Katt, 330 U.S. 386, 67 (1947) (state courts of general jurisdiction are under constitutional obligation to enforce federal causes of action); Mondou v. New York New Haven & Hartford R.R. Co., 223 U.S. 1, 32 (1912) (same)).

The rule in Younger is designed to "permit state courts to

---

    that all real property taxes in New Jersey be assessed
    annually at the local or municipal level.

McMahon v. City of Newark, 951 A.2d 185, 194 (N.J. 2008).

try state cases free from interference by federal courts, particularly where the party to the federal case may fully litigate his claim before the state court." New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ., 654 F.2d 868, 897 (3d Cir. 1981) (quoting Hicks v. Miranda, 422 U.S. 332, 349 (1975) (quoting Younger, 401 U.S. at 43)). Here, not only did the parties choose New Jersey state court as a forum for any dispute arising from their agreements, it is the proper forum for the dispute even if they did not. See Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 437 (1982) ("It would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court.").[10]

---

[10] The same analysis also implicates the Colorado River abstention doctrine. "[A]bstention under the Colorado River doctrine is appropriate under principles of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Chambers v. Wells Fargo Bank, N.A., 726 F. App'x. 886, 888 (3d Cir. 2018) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Whether abstention under Colorado River is appropriate is a two-part inquiry: First, is there a parallel state proceeding that raises substantially identical claims and nearly identical allegations and issues? If so, does the action present extraordinary circumstances by evaluating the following factors: "(1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the

17

**CONCLUSION**

Plaintiffs are already pursuing the same claims brought here in state court as a counterclaim complaint, and the New Jersey state court, having already declined to dismiss the City of Camden's complaint in favor of this litigation, has taken on the task of assessing the relative merits of the parties' claims. A federal trial court should be loath to step in where an adequate forum exists in state court and the issues to be litigated implicate important matters of state and local policy. Based on the parties' forum selection clause and to promote comity between state and federal courts, Plaintiffs' complaint must be dismissed. The proper venue for the claims in this matter is the New Jersey state court.

An appropriate Order will be entered.


Date: March 31, 2019          s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.

---

federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." Id. (quoting Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 308 (3d Cir. 2009) (other citations omitted).